UNITED STATES DISTRICT COURT **05-21013**
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION **CIV-SEITZ**

CASE NO._____

/ McALILEY

MAXIMO HADDAD, an individual,

           Plaintiff,

vs.

RAV BAHAMAS, LTD., a foreign corporation,
and GERARDO CAPO, an individual,

           Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff Maximo Haddad sues Rav Bahamas, Ltd. ("RAV") and Gerardo Capo ("Capo") and

states the following:

### Parties, Jurisdiction and Venue

1.     This is an action for breach of fiduciary duty (Count I), specific performance (Count

II), constructive trust (Count III), and an accounting (Count IV) and other relief involving an amount

in controversy in excess of Seventy Five Thousand Dollars and No/100 Dollars ($75,000.00).

2.     Maximo Haddad is an international businessman and developer, and a resident of

Panama City, Panama.

3.     Gerardo Capo is a developer and resident of Miami-Dade County.



*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

4.      Rav Bahamas, Ltd. is a Bahamian company, incorporated and existing under the laws of the Commonwealth of the Bahamas.  It maintains its principal place of business in Miami-Dade County,[1] and is a constituent of the "Capo Group" of companies, controlled by Capo from his Miami-Dade County offices.

5.      Personal jurisdiction in this Court is proper under 28 U.S.C. §1332 because plaintiff Haddad is a citizen and resident of Panama; defendant Capo is a resident Florida; and defendant RAV is a resident of Florida.

6.      Venue lies in this District, pursuant to 28 U.S.C. §1391 because the Defendants reside in this district and substantial part of the events giving rise to the claims occurred in this district.

### Fact Common to All Counts

7.      Gerardo Capo founded RAV in the late 1990s to acquire and hold approximately seven hundred (700) acres of land situated on the northern portion of the Island of North Bimini in The Bahamas.  RAV completed the acquisition of the property, which is now commonly referred to as "Bimini Bay." At all relevant times, Mr. Capo maintained control over the management and direction of RAV.

---

[1] Attached hereto as Exhibit "A" is a true and accurate copy a RAV "Facsimile Transmittal Sheet," identifying RAV's Miami address.  Attached as Exhibit "B" is a true and accurate copy of a page from the Bimini Bay website identifying RAV's Miami address as the location of the Bimini Bay "Sales Office."  Attached as Exhibit "C" is a true and accurate copy of a July 18, 2001 letter on Bimini Bay letterhead, listing one of RAV's Miami addresses as the return address.  Attached as Exhibit "D" is a true and accurate facsimile transmission from Wode Engineering, Inc. to RAV at a facsimile line with a "305" area code and referencing RAV's Miami address.

-2-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

8.     On July 31, 1997, RAV and the Government of the Commonwealth of The Bahamas, entered into an agreement authorizing RAV to develop a resort hotel, casino, golf course, private residences, and a number of amenities and facilities catered to serving the anticipated resort guests and residents (the "Bimini Bay Project" or the "Project"). In total, the development costs of the Project were expected to exceed well over $100 Million.

9.     By 2001, RAV claimed it had expended approximately $10 Million in land acquisition and development costs, and was in need of additional capital to continue to fund the Project. Indeed, as a result of RAV's initial undercapitalization, the Bahamian Government threatened to revoke RAV's development rights unless RAV secured additional funding for the Project. Mr. Capo, therefore, sought out additional financing to satisfy the Bahamian Government's demands.

10.     At some point thereafter, Mr. Capo was introduced to Mr. Haddad. Mr. Haddad had successfully completed a number of large-scale development projects in Latin America and had access to the capital which Mr. Capo needed to keep the Project afloat. Mr. Capo solicited Mr. Haddad's involvement in the Project.

11.     Negotiations ensued and Mr. Haddad, Mr. Capo and RAV eventually agreed to a joint venture strategy whereby Mr. Haddad would receive fifty percent (50%) equity stake in the Project, among other things, in exchange for a $10 Million capital contribution. The parties further agreed to form a number of entities "equally owned by Rav and Haddad" to pursue various elements of the development.    A true and correct copy of a April 11, 2001, Memorandum of Agreement, documenting the parties joint venture agreement is attached hereto as Exhibit "E."

-3-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

12.     One such entity was earmarked to take title to approximately thirty-five (35) acres of the Property and develop Phase I of the Project, which would consist of single and multi-family residences, a marina, a utility plant, docks, and other amenities and facilities. Other entities were earmarked to take title to the remaining six hundred and sixty five (665) acres, which would comprise Phase II of the Project. *See* Ex. E, ¶ 4.

13.     On April 11, 2001, RAV, Mr. Capo, and Mr. Haddad (the "Joint Venture Partners") executed a Memorandum of Agreement (the "MOU") in Miami, Florida, memorializing the terms and conditions of their joint venture. *See* Ex. E.

### The Memorandum of Agreement

14.     In consideration for a fifty percent (50%) equity stake in the Project, as well as other contractual terms and conditions, Mr. Haddad agreed to contribute $10 Million to the Project, of which $3.4 Million was due upon the execution of the MOU. *See* Ex. E, ¶ 5. The balance of the contributions was due upon RAV's transfer of title to the Bimini Bay Property to the new entities. *Id.*

15.     One entity, RAV/Haddad, was earmarked to take title to approximately thirty-five (35) acres of Bimini Bay and develop Phase I of the Project, which would consist of single and multi-family residences, a marina, a utility plant, docks, and other amenities and facilities. Other entities were earmarked to take title to the remaining six hundred and sixty five (665) acres, which would consist of Phase II of the Project. *See* Ex. E, ¶ 4. In accordance with the MOU, Mr. Haddad was to be awarded an equal share in each entity.

-4-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

16.     Upon execution of the MOU, Mr. Haddad paid $3.4 Million to RAV, as required under Paragraph 5 of the Agreement.   Since then Mr. Haddad has contributed an additional $2.6 Million to the Project, raising his contribution to approximately $6 Million.

### Mr. Haddad is Introduced to the
### Bahamian Government as a Joint Venture Partner

17.     In order to satisfy the Bahamian government's concerns over the progress and financing of the Project and to preserve RAV's development rights, Mr. Capo introduced Mr. Haddad to the Bahamian Prime Minister as partner in the Bimini Bay Project.

18.     On July 25, 2001 Mr. Haddad's financial statement was transmitted to the Office of the Prime Minister, along with a cover letter introducing Mr. Haddad.   The letter explained, in pertinent part:

> . . . Mr. Haddad has already to date assisted the project by advancing approximately six million dollars ($6M) to enable the project to reach the level of development that it has so far.
>
> *       *       *
>
> It is the intention of the joint venture partners, however, to look to the capital markets in the United States and else where [sic] to assist with the bulk of the financing for this project.

A true and accurate copy of the July 25, 2001 letter is attached as Exhibit "F."

19.     In order to demonstrate his commitment to the Project and his financial wherewithal to the Bahamian Government, Mr. Haddad transferred several million dollars to a bank account as proof to the Bahamian Government of his good faith.

20.     On September 27, 2001 the Office of the Prime Minister approved Mr. Haddad as partner in the Project:

-5-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

> I am directed to advise that approval has been granted for Mr. Maximo Haddad to participate in a joint venture arrangement with Rav Bahamas Limited (Mr. Gerardo Capo) to facilitate the implementation of the Bimini Bay Project.

A true and accurate copy of the September 27, 2001 letter is attached as Exhibit "G."

21.    With the Bahamian Government satisfied that Haddad's participation and resources were sufficient to advance the Project, Haddad, RAV and Capo set to work on the business of their joint-venture.  Haddad met with project architects in Ft. Lauderdale, Florida, making material contributions to the design of the Project.  He also shipped construction machinery worth over $2 Million from Central America to the Project site.  Haddad directed that this machinery be used to dredge an area of shallow water to a sufficient depth to support a marina, and then directed that the dredged earth be used as land-fill in another area of Bimini Bay to create a new island, upon which additional construction could be erected.  A true and accurate copy of the dredging plan is attached hereto as Exhibit "H."

22.    Not only did Mr. Haddad's commitment of his time and expertise to the Project enhance the Project's value, but Mr. Haddad's credibility and financial backing allowed the Project to secure additional agreements and financial concessions from the Bahamian Government.

23.    Later, Haddad learned that when the heavy equipment Haddad shipped to the project site reached the Bahamas, Mr. Capo caused the machinery to be imported under the name of an entity under Mr. Capo's sole control so as to cloud title to that machinery.  To this day, Mr. Capo has refused to return the machinery.

-6-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

24.     Moreover, despite receiving Mr. Haddad's $3.4 Million preliminary contribution and the additional $2.6 Million contribution, RAV and Capo have refused to execute the documents necessary to form the stipulated entities, much less convey the Bimini Bay Property to the stipulated entities, or otherwise comply with the terms of the MOU.

25.     Upon information and belief, RAV and Capo, through his personal control of RAV, have depleted and siphoned off for uses unrelated to the Project Mr. Haddad's $6 Million contribution.   The Project's finances, however, are murky and complex.  As demonstrated by Exh. "I" hereto, a true and accurate copy of an account statement of one of the entities created to pursue the Project, Rav and Capo managed to issue approximately 100 drafts – upon only one of the many accounts through which Project cash flows – totaling approximately $349,000 in a mere twenty day period.  According to Exh. "I" the account balance during that twenty day period never exceeded $100,000.  Moreover, as demonstrated by Exhs. "J," a true and accurate copy of Bimini Bay bank account statement, and "K," a true and accurate copy of a RAV accounts payable statement, both attached hereto, the Project's cash flows through a labyrinth of accounts to numerous payees.

26.     Finally, RAV and Mr. Capo have sold off parcels and continue to offer to sell parcels of the Bimini Bay Property without consulting with Mr. Haddad or sharing the profits therefrom.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 789-3200

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

## COUNT I
### Breach of Fiduciary Duties (RAV and Capo)

27.     Plaintiff realleges Paragraphs 1 through 26 as if fully stated herein.

28.     On April 11, 2001, RAV, Mr. Haddad and Mr. Capo established a joint venture for the purpose of funding and pursuing the Bimini Bay Project.

29.     As a consequence, RAV and Mr. Capo each owed Mr. Haddad fiduciary duties in connection with their pursuit of the Bimini Bay Project.

30.     RAV and Mr. Capo breached their respective fiduciary duties, including their duties of loyalty and fair dealing, by self-dealing; withholding information regarding the finances and management of the Project; usurping business opportunities; selling Bimini Bay property and failing to share profits, among other things.

31.     As a consequence of RAV and Mr. Capo's conduct and their "squeeze out" of Mr. Haddad, Mr. Haddad has lost a unique business opportunity and has suffered damages, including lost profit damages.

**WHEREFORE,** Plaintiff demands judgment against RAV and Mr. Capo for damages, including lost profit damages, pre-judgment and post-judgment interest and cost, attorneys' fees and any other relief the Court deems appropriate.

## COUNT II
### Specific Performance – (RAV)

32.     Plaintiff realleges Paragraphs 1 through 28 as if fully stated herein.

33.     The MOU is a valid and enforceable contract between RAV, Mr. Haddad and Mr. Capo.

-8-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

34.     RAV breached the MOU by failing to convey its interest in the Bimini Bay Property as stipulated in the Agreement, irreparably damaging Mr. Haddad as a result.

35.     Because the MOU contemplated the transfer of RAV's interests in real estate, Mr. Haddad has no adequate remedy at law and is entitled to specific performance of the contract.

36.     All conditions precedent to the MOU have been performed or waived.

**WHEREFORE,** Plaintiff demands judgment against RAV for specific performance, pre-judgment and post-judgment interest and cost, attorneys' fees and any other relief the Court deems appropriate.

## COUNT III
## Constructive Trust (RAV and Capo)

37.     Plaintiff realleges Paragraphs 1 through 33 as if fully stated herein.

38.     RAV and Capo owed Mr. Haddad fiduciary duties of good faith and fair dealing as a result of the MOU and their joint venture.

39.     Mr. Haddad contributed approximately $6 Million and approximately $2 Million worth of heavy construction machinery to the Project.

40.     As a consequence of RAV and Capo's "squeeze out" of Mr. Haddad and their conduct in retaining Mr. Haddad's contribution and machinery, RAV and Capo have been unjustly enriched to Mr. Haddad's detriment.

-9-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

**WHEREFORE,** Plaintiff demands judgment against RAV and Mr. Capo and the imposition of a constructive trust upon Mr. Haddad's $6 Million contribution and the construction machinery, damages, pre-judgment and post-judgment interest and cost, attorneys' fees and any other relief the Court deems appropriate.

## COUNT IV
## Joint Venture Accounting (RAV and Capo)

41.     Plaintiff realleges Paragraphs 1 through 39 as if fully stated herein.

42.     RAV, Mr. Capo and Mr. Haddad agreed to pursue the Project as joint venturers.

43.     RAV and Mr. Capo have breached their fiduciary duties to Mr. Haddad, "squeezed out" Mr. Haddad from the Project, and have, upon information and belief, misapplied joint venture assets, materially harmed the joint venture's business and balance sheet, and have acted in a manner inconsistent with the purpose for which th joint venture was formed.

44.     The Project's accounts are complex and extensive and, as a result of the breaches alleged herein, are likely to implicate a number of RAV and Capo's affiliated entities. Therefore, Haddad has no adequate alternative remedy at law to evaluate the uses to which his capital contributions were put or to assess the value of his share in the joint venture.

45.     As a consequence, Mr. Haddad is entitled to a statutory and common law accounting of the joint ventures affairs and accounts.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

        a.      order an accounting;

        b.      appoint a special master for the purposes of conducting the accounting;

-10-

*Maximo Haddad v. Rav Bahamas, Ltd. and Gerardo Capo*

c.      award Mr. Haddad his proportionate share of the joint venture estate;

d.      award Mr. Haddad his reasonable attorneys' fees and costs; and

e.      grant any additional relief the Court deems just and proper.

## JURY DEMAND

Haddad hereby demands a jury trial on all issues so triable.


DATED: April 12th, 2005.

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
   ALHADEFF & SITTERSON, P.A.
*Attorneys for Plaintiff*
Suite 2200 - Museum Tower
150 West Flagler Street
Miami, Florida 33130
(305) 789-3200 - Telephone
(305) 789-3395 - Facsimile


By: _____
   ALEXANDER ANGUEIRA
   Florida Bar No. 0716091
   aangueira@swmwas.com
   CHRISTOPHER L. BARNETT
   Florida Bar No. 0360510
   cbarnett@swmwas.com

-11-

## **VERIFICATION**

I, Maximo Haddad, do hereby declare and aver under penalty of perjury that all facts stated in this Verified Complaint and the attached Exhibits are true and correct. Executed on April 12th, 2005.

_____
Maximo Haddad

# EXHIBIT A

Image reflects quality of original submission

FROM THE OFFICES OF GERARDO CAPO

RAV BAHAMAS LTD.

BIMINI BAY RESORT & CASINO

---

FACSIMILE TRANSMITTAL SHEET

---

TO: _____                    FROM: _____

FAX NUMBER: _____        TOTAL NUMBER OF PAGES: _____

PHONE NUMBER: _____      SENDERS REFERENCE NUMBER:

RE: _____

---

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY

---

1150 NW 72 nd AVE., PH2

MIAMI FLORIDA 33126

TEL, 305.513.0501 / FAX 305.513.9108

Submit   Reset

# EXHIBIT B

**Image reflects quality of original submission**



### Contact

**Your re-discovery of Bimini is nearly complete.**

We hope you have become enchanted with the promise of luxury, excitement, and entertainment offered at the Bimini Bay Resort and Casino. We will be here when you are ready to convert this promise into the reality of life at our resort, and welcome you to visit as a guest or prospective homeowner.

There are several ways you can reach us, please review the option below and contact us when you are ready...

**Visit Our**
**Sales Ofice**
**1150 NW 72nd Avenue, PH**
**Miami, FL 33126**

**Call Us To**
**Request**
**a Brochure**
**305-513-0506**

**Fill Out Our Web Form**
**or Email Us At**
**sales@biminibayresort.com**

| Return to Top | Close Window |

# EXHIBIT C

Image reflects quality of original submission



**.../ V BAHAMAS LTD.**
*1414 NW 107 AVE., SUITE 400*
*MIAMI, FLORIDA 33172*
*TEL. 305 513-0501*
*FAX. 305 513-0480*
*Toll Free 800-475-8704*

July 18th, 2001

Water & Sewerage Corporation of the Bahamas
Mr. Godfrey Sherman, Deputy General Manager
P.O. Box N 3905
Nassau, Bahamas                                      Via Fax No.(242) 326-4566

RE: Water & Sewerage Corporation Supply Agreement for Bimini

Dear Mr. Sherman:

Based upon further consultations with the corporation and our joint venture partner, Ionics, I would like to supplement my letter of July 16, 2001 with the following refinements:

1) The base water sale price to the Corporation for each 1,000 Imperial gallons of potable Water will be at a price of US$ 10.00, including the cost of pumping;

2) Assuming that we are able to execute all required documentation with the Corporation and the Government by August 1st, 2001, we shall be able to have our Plant operational and ready to supply water to the Government pipeline by the week of October 15th, 2001; and

3) BBW will stand behind RAV's previous commitment to grant an incremental cost reduction in the Water Sale price to the Corporation based upon an increase in the usage and production of water.

Reductions will be figured in incremental increases of the Corporations demand of no less than 25,000 Imperial gallons per day, with an initial threshold volume amount to be negotiated between all parties concerned, taking into account the revised "Phase One" of the Bimini Bay Project.

Best Regards,

Sidney Z. Brodie, Vice President

SZB:om



*V BAHAMAS LTD.*
*1414 NW 107 AVE., SUITE 400*
*MIAMI, FLORIDA 33172*
*TEL. 305 513-0501*
*FAX. 305 513-0480*
*Toll Free 800-475-8704*

July 16th, 2001

Water & Sewer Corporation of the Bahamas
Mr. Godfrey Sherman, Deputy General Manager
P.O. Box N 3905                                     Via Fax No. 242-326-4566
Nassau, Bahamas

RE:     WATER & SEWERAGE CORPORATION SUPPLY
        AGREEMENT FOR THE BIMINI

Dear Mr. Sherman:

My best to you and yours and I hope this finds you in the best of health and spirits.

As has been previously delivered to you and discussed, our Company, through it's appointed sub-developer, is prepared to enter into a water purchase agreement with the Water & Sewarge Corporation of the Bahamas for the delivery of potable water produced through a reverse osmosis process.

The basic structure of the proposal for the delivery of sixty (US60,000.00) gallons per day is as follows:

| | | |
|---|---|---|
| BASE WATER PRICE PER 1000 US GAL. | AS PER BBW AGREEMENT WITH RAV | $8.33 |
| PRESSURE REQUIREMENTS | | |
| INCREASED SUPPLY PRICE/1000 US GAL | COST ASSOCIATED WITH INCREASING PRESSURE FROM 30 PSI TO THE REQUESTED 45-60 PSI RANGE | $0.05 |
| REVISED BASE PRICE/1000 US GAL | | $8.38 |

WATER STORAGE TANK

260,000.00 AT A MINIMUM STORAGE CAPACITY AT THE PRESENT TIME, TO BE INCREASED TO 1.0 MILLION GALLONS WITHIN APPROXIMATELY ONE (1) YEAR.

WATER QUALITY SPECIFICATIONS

Quality of water delivered will meet the following specifications, according to the W&SC ST&C:

AWWA Guidelines for Portable Water

| | | |
|---|---|---|
| Total Dissolved Solids | = | less than 417 mg/l |
| pH | = | between 7.0 and 7.5 |
| Chloride ion | = | less than 250 mg/l |

I am to advise that the Government's water meter will be installed at approximately our southern most property boundary, adjacent to the "Rockwell" property.

It is also contemplated that the water produced at the plant to be located on our property will be pumped to the storage facilities and then re-pumped to the our respective meters. In the event of a power failure on an island wide basis, we will have installed emergency generators to able to pump the water to our respective systems until such time as the power is restored. Once gain, the water storage capacity presently will hold a three (3) day supply for both of our needs and will be increased to the 1.0 Million gallon storage facility which should be more than enough for all of our contemplated needs even after the total build-out of the Bimini Bay project.

Please be advised that Ionics, our joint venture partner in this undertaking, already has in production the initial plant and contemplates having the system ready for production within ten (10) weeks from now, assuming we are able to reach a meeting of the minds in our other agreements.

Under separate cover, I will be sending to you requested changes and comments on the "Form of Agreement for Desalinated Water Supply" form which we have discussed on previous occasions.

I look forward to meeting you and the General Manager and Minister Russell, if possible, on this Wednesday.

Looking forward to hearing from as soon as you have had a chance to review this letter.

Best regards,

Sidney Z. Brodie

SZB:om

# EXHIBIT D

**Image reflects quality of original submission**

FROM FINANCE DEPT. 5139004                                    P. 1

FROM : WODE ENGINEERING INC        PHONE NO. : 850 907 9571        Apr. 25 2001 11:43AM P1

*To Gail*
*From Oscar*
*We need to*
*send Money*
*ASAP !*

# Wode Engineering, Inc.

*3221 Heather Hill Lane*
*Tallahassee, Florida 32308*
*(850) 907-9591*
*Fax: (850) 907-9571*

## FAX TRANSMISSION COVER SHEET

**Date:**     April 25, 2001

**To:**       Oscar Barbara - Bimini Bay

**Fax:**      (305) 513-0578

**Subject:**  Bimini Project Site Evaluation

**Sender:**   Norman L. Wode, P.E.

---

*YOU SHOULD RECEIVE One (1) PAGE(S), INCLUDING THIS COVER SHEET.*
*IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (850) 907-9591.*

---

Dear Oscar:

After I spoke with you almost two weeks ago I was available to come to Bimini the following week.   At this time I may be fully committed for the next week and one-half but could possibly come to the island during the second week of May.   I am surprised to see that a month has passed since I submitted my proposal for what I thought was urgent.

Please let me know what the status of project is.   It seems like trying to coordinate everybody to go to the site at one time is not going to work.   If earthwork is proceeding, I should visit the site as soon as possible.

If you still want me to visit the site please provide written authorization to proceed and arrange for initial payment for this work as indicated in on March 26th proposal. I would need about a weeks notice to arrange a trip.

Thank You,

# WODE ENGINEERING, INC.

Geotechnical Engineering Consultants          (Serving Florida, Bahamas and the Caribbean)
Norman L. Woda, P.E., B.S.C.E., M.S.C.E.          e-mail: wodesoil@aol.com

P.O. Box 12776, Tallahassee, FL 32317-2776          Phone (850) 907-9591
3221 Heather Hill Lane, Tallahassee, FL 32308          FAX (850) 907-9571

March 27, 2001          Fax (305) 513-0578

RAV Bahamas, Ltd.
1414 NW 107 Avenue, Suite 409
Miami, Florida 33172

Attn: Mr. Oscar Barbara

Re:     **Preliminary Geotechnical Evaluation**
        **Bimini Bay Resort – Phase I**
        **Bimini, The Bahamas**

Gentlemen:

As requested, we are submitting our proposal for a preliminary site Geotechnical evaluation of referenced property. We understand the total project area is 700 acres as shown on furnished Land Use Plan. (1) Initially, we understand that your primary interest would be to study the phase I site which is shown in detail on furnished Phase I Key Plan. We were informed that the phase I area is approximately 30 acres and primarily one to three-story residential construction is planned in this area. We further understand that earthwork is currently underway within the phase I site area and that you desire that we review the work in progress. (2) We will also more closely observe and perform some testing in future residential area north of proposed hotel site. We understand that this area has been cleared and much of remaining areas are covered with mangrove and will not be evaluated in detail at this time.

**Scope of Work**

We anticipate visiting the site and providing primarily a visual survey and consultation with some test excavating and laboratory testing to determine overall site conditions. We will also provide foundation recommendations for phase I of this project. If deemed appropriate, should questionable areas be observed, we understand that equipment would be available to examine these areas during our site visit. If areas have been stripped and backfilled, we would need to excavated test pits to evaluate the bearing ability of this area. This removal of in-situ soils and covering with fill is of most concern. We have also been provided with some existing soil testing data but have not had sufficient time to study this information as it relates to the phase I location. At completion of field reconnaissance, we will provide a detailed written report of Geotechnical survey which will contain the following:

> (1)     Findings of primarily visual overview of planned phase I construction site.
>         As necessary, some excavations on the site may be performed during
>         our site visit.     All observations and conclusions based on these findings

*Bimini Bay Resort - Phase I*          *March 27, 2001*          *Page 2 of 2*

will be presented in our cursory report.  We will also comment on test boring records and laboratory testing completed by others and furnished by the client. Some study of future residential area to north of hotel area will also be provided with this phase I study and foundation report.

(2)     Discussion and recommendations regarding earthworks completed and presently underway will also be provided.  Also recommendations will be made with regard to use of site materials for backfill or other potential building construction.  At this time we would allow for completion of several laboratory proctor tests to evaluate the fill quality for phase I.

(3)     Preliminary foundation recommendations for the planned construction will be provided based on boring data by others and this limited site evaluation.  We will also provide recommendations regarding site preparation to achieve proper bearing medium for shallow foundations.   This is particularly important since earthwork operations are already underway and some areas have been filled.

(4)     At the conclusion of this preliminary site evaluation we will provide recommendations for any additional required field or laboratory testing.  As work proceeds additional testing would likely be required to ensure foundation areas are properly prepared.

**Professional Fee**

Our fee to conduct this site Geotechnical evaluation survey will be $6,950.00 plus travel, local transport and living expenses.   This fee includes site engineering, evaluation and report.  We anticipate requiring 1 1/2 to 2 days to conduct this study. Including expenses our total fee would not exceed a lump sum fee of $7,850.00. The laboratory proctor testing and grain size analyses of fill material will be provided for an additional $885.00. We understand that you presently have equipment working on site which could be made available to excavate test holes as required.  To initiate this study a payment of $3,250.00 is due prior to travelling to the site and final payment is due with submittal of geotechnical evaluation report.

Respectfully submitted,
**WODE ENGINEERING, INC.**

Norman L Wode, P.E.
**Geotechnical Consultant**
NLW/jfa
Attach: Project Resume

Proposal Acceptance _____

**WODE ENGINEERING, I**
Geotechnical Engineering Cons
(Serving Florida, Bahamas and the Ca

# EXHIBIT E

Image reflects quality of original submission

**MEMORANDUM OF UNDERSTANDING**

**April 11, 2001**

**RE: BIMINI BAY PROJECT; RAV - HADDAD**

**WHEREAS:**

Rav Bahamas Limited ("Rav") is the unencumbered fee simple owner of some 700 acres of property at North Bimini ("Bimini Bay"); and

Rav has entered into Heads of Agreement with the Government of the Bahamas for the development of Bimini Bay to include but not limited to, hotels, casino, and marinas, golf course, condominiums, town centre, water treatment plant and all other ancillary facilities necessary for the forgoing; and

Maximo Haddad ("Haddad") has agreed that Rav's value to date is $10M in land acquisition and development costs; and

Haddad recognizes that Rav has in addition to date $1.2M in "sweat equity" with respect to the proposed development and project at Bimini Bay and will pay the same to Rav as hereinafter provided; and

Haddad is interested in becoming an investor in the Bimini Bay project; and

Rav is interested in having Haddad as an investor in the Bimini Bay project; and



**NOW THIS MEMORANDUM WITNESSETH THAT:**

1.  Rav and Haddad will so structure the assets of Rav to best realize the potential of the said company's assets.

2.  Rav will convey all its right title and interest in the said 700 acres free and clear of all

245

encumbrances to various companies to be designated by Rav and Haddad.

3. Rav will assign all its right title and interest free of any and all encumbrances in the Heads of Agreement to various companies to be designated by Rav and Haddad.

4. It is contemplated in the first instance that the following companies will be necessary, namely:

a. A company to take title to and develop Phase I of the Bimini Bay project which will encompass condominiums (multi family, single family and town house), a marina, utility plant docks etc. and the land needed for this Phase I will be approximately 35 acres.

b. A company or several companies to take title to the balance of the property, Phase II, which will require a land development (use) study, funding to conduct the same, development of the infra structure of any proposed development of such land.



5. The above companies will be equally owned by Rav and Haddad. Rav will receive equal shares in each of the aforementioned companies as consideration for the transfer of its ownership of the 700 acres and the assignment of its interest in the Heads of Agreement and Haddad will also receive an equal amount of shares in these two companies by contributing Ten Million ($10M) to carry out the Phase I development and to carry out the Phase II project. The aforementioned amount will be paid in full to Rav when title of the 700 acres has been accepted and transferred to the new companies and approval has been obtained with respect thereto and approval has been obtained with respect to the transfer of the Heads of Agreement for the benefit of the new companies. The additional sum of one million two hundred thousand ($1.2M) will be paid as hereinafter provided direct to Rav in recognition of its "sweat equity" in the Bimini Bay project.

246

6.  It is also contemplated that other companies will be needed for the purpose of realizing the development of the project and as Rav does not have the resources or skill to accomplish all of the necessary facets of development various companies and skill set will have to be engaged to deliver such services, namely:

a. A company to carry out the sales and marketing of the project as a whole.
b. A company to carry out all vertical construction development.
c. A company to carry out all the horizontal construction development.
d. A management company to manage all the property as the same is developed.
e. Creation of any other companies that may be necessary.

7.  Mr. Gerardo Capo ("Capo") and Haddad will equally own all of the companies mentioned in Clause 6 above.

8.  All monies paid and advanced by Haddad to RAV Bahamas Ltd. under the terms of this Memorandum except for the one million two hundred thousand ($1.2M) dollars in "sweat-equity" shall be deemed as part payment of the amount agreed to be paid by Haddad in the amount of $10M to RAV – Haddad company aforementioned when the land has been transferred free and clear to the companies to be designated by Rav and Haddad and all the rights title and interest of the Heads of Agreement have been assigned and transferred to the companies to be designated by Rav and Haddad.



9.  Capo will on the execution of this Memorandum make immediate arrangements to introduce Haddad as his partner in the Bimini Bay project to the Prime Minister and move to obtain the necessary approvals to assign and transfer the rights and obligations of the Heads of Agreement to the companies to be designated by Rav and Haddad.

247

10. Once good and marketable title has been deduced to Haddad and Rav has received approval to transfer its right title and interest in the Heads of Agreement as herein contemplated and all the monies paid or to be paid by Haddad have been unconditionally released to Rav - Haddad  then the costs relating to any of the above will be paid out of such funds after being approved by Rav and Haddad, such costs to include but not be limited to, stamp duty on the transfer of any of the subject property, legal fees for any work carried out with regard to any matters relative to the above and the incorporation of any companies necessary to carry out any of the above contemplated activities.

11. In the event that Rav is not able to deliver good and marketable title to the subject 700 acres or the transfer of the rights title and benefits as well as the obligations of the Heads of Agreement as contemplated herein or for any other reason fails or refuses to close then all monies paid by Haddad to Rav including the payment of "sweat-equity" as hereinafter provided will be returned to Haddad. As an alternative Haddad could elect to have shares issued in the joint venture and service companies equal to the amount of any advance or contribution (including the "sweat-equity") that he would have made at the relevant time. The value of the shares to be obtained by Haddad will be based upon a land value of $10M plus any and all cash advances made by Haddad.

Rav shall execute in favour of Haddad a Promissory Note in the amount of US$3.4M equal to the amount of monies advanced and paid by Haddad to Rav. Gerardo Capo shall personally guarantee the above-mentioned note. In the event that Haddad accepts shares as hereinbefore provided the Promissory Note and personal guarantee shall be cancelled on the issuance of the said shares.

In the event that Haddad elects to receive back his capital contributions due to the inability of Rav to deliver good and marketable title and the transfer of the benefits and obligations of the Heads of Agreement then such monies will be repaid

248

to Haddad but Rav shall have twelve (12) months to
so do and interest at the rate of 10% shall accrue
on all monies due from the time that Rav is unable
to complete the contemplated transaction to the
time of payment in full.

In the event that Haddad fails to pay the balance
of the monies upon the required approval of the
Central Bank of the Bahamas and the Investment
Board, delivery of good and marketable title by
Rav, and transfer of Heads of Agreement provisions
to RAV - Haddad company, this agreement shall be
null and void and all monies paid or advanced by
Haddad to Rav shall be repaid by a promissory note
payable one year from such date with 10% interest.

12.  As the contemplated project will require funding
prior to all of the necessary approvals having
been obtained from the Government of the
Commonwealth of the Bahamas and other regulatory
agencies Haddad has agreed to make a capital
advance in the sum of two million two hundred
thousand (US$2.2M) dollars to Rav on the execution
of this Memorandum. In addition Haddad will also
on the execution of this Memorandum pay the
further sum of $1.2M in "sweat-equity" to Rav.

13.  It is understood and agreed that formal agreements
to embody the above with more particularity are to
be drafted within 10 days from Government approval
or final response.

14.  It is felt that the execution of this Memorandum
of Understanding is necessary, as so much time has
elapsed since the beginning of the negotiation by
the parties that some if not all of their
understandings and agreements ought to be
memorialized herein.



15.  The management and operation of each of the
companies aforementioned is critical to the
success of the project and to each party hereto
and a clear and defined programme of corporate
governance has to be established and articulated
in the formal agreements to be entered into.

249

16. Time is deemed to be of the essence by both parties hereto and they will act accordingly. Therefore, Rav and Haddad mutually agree that each party must comply with its obligations in full no latter than 10 days from the date of approval of Central Bank of the Bahamas and the Bahamas Investment Board. Failure to comply by either party will result in a breach of this agreement.


_____ President
Rav Bahamas Limited


_____
Gerardo Capo


_____
Maximo Haddad

# EXHIBIT F

Image reflects quality of original submission

# ALEXIOU, KNOWLES & CO.

### Counsel and Attorneys-at-Law
### Nassau, Bahamas

Partners
Emanuel M. Alexiou, B.A.
Emerick A. Knowles, B Comm.
E. Terry North, LL.B.
Erica Paine, B.A., LL.B., M.A., (Freeport)
Robert F. Van Wynen, B.A., LL.B. (Hons)
Luther H. McDonald, B.A., LL.B. (Hons)

Associates
Vanria M. Lightbourn, LL.B (Hons)
Christopher G. Chee, B.A., LL.B (Hons)
Wendi S. Dean, B.Sc.LL.B (Hons)

Consultant
Hon. James F. Knowles, M.P.,
(Inactive)

Nassau
St. Andrew's Court
Frederick Street Steps
P.O. Box N-4805
Nassau, N.P., Bahamas
Telephone
   (242) 322-1126
   (242) 323-5600
Facsimile
   (242) 328-8595
   (242) 326-0768

Fr      t
Or.    une A
Regent Centre West
Explorers Way
P.O. Box F-42531
Freeport, Grand Bahama
Telephone
   (242) 351-7371
Facsimile
   (242) 351-7505

Abaco
Stratton Drive
Marsh Harbour
P.O. Box AB-20115
Great Abaco, Bahamas
Telephone
   (242) 367-2010
   (242) 367-2024
Facsimile
   (242) 367-2394

E-
in.    ahomaslaw.com

Web Address
www.bahamaslaw.com



Sole Bahamas Member



BahamasLaw.com

BY HAND

July 25, 2001

Mr. David R. Davis, for
Permanent Secretary
Office of the Prime Minister
Cable Beach
Nassau, Bahamas.

Dear Mr. Davis,

Re:   RAV Bahamas Limited (Bimini Bay)
      and Maximo Haddad ( MH Holdings Ltd.)

Further to our letter to you of yesterday's date we are now pleased to enclose herewith a financial statement of Mr. Maximo Haddad which we trust that you find to be in order.

Please note that Mr. Haddad has already to date assisted the project by advancing approximately six million dollars ($6M) to enable the project to reach the level of development that it has so far.

It is Mr. Haddad's intention to provide further funds from his own resources to continue the project.

It is the intention of the joint venture partners, however, to look to the capital markets in the United States and else where to assist with the bulk of the financing for this project.

Mr. Haddad has had extensive experience with various construction projects and developments primarily in Mexico and Panama. He has been responsible for building office buildings in both Mexico and Panama as well as major highway thoroughfares in Panama. The costs of the toll roads constructed in Panama have exceed one billion dollars and he has raised substantial monies in the United States to assist him in the funding of such projects. Mr. Haddad brings depth and a wealth of experience to the Bimini project.

ALEXIOU, KNOWLES & Co.
Counsel & Attorneys

Page 2.

   We trust that you will find everything to be in order.
Should you require any further information please do not
hesitate to contact us.


                              Yours very truly,
                              ALEXIOU, KNOWLES & CO.



                              Emanuel M. Alexiou

EMA/cl
Encl.

# EXHIBIT G

Image reflects quality of original submission

APR-07-2005 THU 04:19 PM ALEXIOU,KNOWLES&CO.          FAX NO. 12423250768          P. 02



**OFFICE OF THE PRIME MINISTER**
Cecil Wallace -Whitfield Centre
Cable Beach
P.O. BOX CB-10980
NASSAU, THE BAHAMAS
Ph.: (242) 327-5826/8

Our Reference:     **OPM/T&I/T/34**

September 27th, 2001

**Mr.Emanuel M. Alexiou**
Alexiou, Knowles & Co.
St. Andrew's Court, Frederick Street Steps
P.O. Box N-4805
Nassau, N.P.
THE BAHAMAS

Dear Mr. Alexiou:

Re:     **Mr. Maximo Haddad**

Your letters dated September 25th, 2001 refers.

I am directed to advise that approval has been granted for Mr. Maximo Haddad to participate in a joint venture arrangement with Rav Bahamas Limited (Mr. Gerardo Capo) to facilitate the implementation of the Bimini Bay Project. You might advise as to the legal structure and shareholding of each partner in due course.

Kindest regards.

Your sincerely,

**David R. Davis**
(for)     Permanent Secretary

/drd

C.C.    **Mr. Julian W. Francis**
        Governor
        The Central Bank of The Bahamas
        Nassau, N.P.
        THE BAHAMAS

# EXHIBIT H

Image reflects quality of original submission



# EXHIBIT I

Image reflects quality of original submission

BIBAYDEV

BIMINI BAY DEVELOP CO. LTD.
BANK RECONCILIATION-SOUTHERN SEC
ACC.# 0515004901
MAY  2001

| | |
|---|---:|
| Beginning Bank Balance | 0.00 |
| Deposits | 100,000.00 |
| Checks Written | 349,092.22 |
| Cancelled Checks | 25,816.39 |
| Funds Available - Book Balance | -223,275.83 |
| Outstanding Deposits | 100,000.00 |
| Outstanding checks | 323,275.83 |
| Ending Bank Balance | 0.00 |

| DATE | PAY TO | CK # | * | AMOUNT DEPOSIT | CHECK AMOUNT | BALANCE | OUTSTANDING DEPOSITS | CHECKS | VOID CHECKS |
|---|---|---|---|---:|---:|---:|---:|---:|---:|
| 05/11/01 | BALANCE CARRIED FORWARD | | | | | 0.00 | | | |
| | ████████████████ | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | 0.00 | | | 0.00 |
| 05/11/01 | DEPOSIT | 1 | | 100,000.00 | | 100,000.00 | 100,000.00 | | 0.00 |
| 05/16/01 | PUBLIC TREASURY | 992 | | | 23,455.54 | 76,544.46 | 0.00 | 23,455.54 | 0.00 |
| 05/16/01 | CARIBBEAN LAND SURVEYOR | 993 | | | 12,870.00 | 63,674.46 | 0.00 | 12,870.00 | 0.00 |
| 05/16/01 | P.S.CUSTOMS BROCKERAGE | 994 | | | 1,152.00 | 62,522.46 | 0.00 | 1,152.00 | 0.00 |
| 05/16/01 | OPAC BAHAMAS | 995 | | | 13,111.50 | 49,410.96 | 0.00 | 13,111.50 | 0.00 |
| 05/16/01 | B.E.C. | 996 | 2 | | 1,003.83 | 49,410.96 | 0.00 | 0.00 | 1,003.83 |
| 05/16/01 | VOID | 997 | | | 0.00 | 49,410.96 | 0.00 | 0.00 | 0.00 |
| 05/16/01 | B.E.C. | 998 | 2 | | 139.70 | 49,410.96 | 0.00 | 0.00 | 139.70 |
| 05/16/01 | DADE BUILDERS CONTRACT | 999 | | | 5,261.76 | 44,149.20 | 0.00 | 5,261.76 | 0.00 |
| 05/16/01 | BIMINI SHIPPING | 1000 | | | 2,537.11 | 41,612.09 | 0.00 | 2,537.11 | 0.00 |
| 05/17/01 | BATELCO | 1001 | | | 1,393.83 | 40,218.26 | 0.00 | 1,393.83 | 0.00 |
| 05/17/01 | BATELCO | 1002 | | | 139.70 | 40,078.56 | 0.00 | 139.70 | 0.00 |
| 05/17/01 | T. SQUARE | 1003 | | | 462.48 | 39,616.08 | 0.00 | 462.48 | 0.00 |
| 05/17/01 | NUMEREDIX | 1004 | | | 58.46 | 39,557.62 | 0.00 | 58.46 | 0.00 |
| 05/17/01 | H.M.C. HELICOPTERS | 1005 | | | 5,617.50 | 33,940.12 | 0.00 | 5,617.50 | 0.00 |
| 05/17/01 | RIGOBERTO MARRERO | 1006 | | | 384.83 | 33,555.29 | 0.00 | 384.83 | 0.00 |
| 05/17/01 | WINGS OF CHARM | 1007 | | | 513.50 | 33,041.79 | 0.00 | 513.50 | 0.00 |
| 05/17/01 | RODRIGO CRUZ | 1008 | | | 621.19 | 32,420.60 | 0.00 | 621.19 | 0.00 |
| 05/17/01 | HOME DEPOT | 1009 | | | 156.56 | 32,264.04 | 0.00 | 156.56 | 0.00 |
| 05/17/01 | UNION TIRES | 1010 | | | 267.90 | 31,996.14 | 0.00 | 267.90 | 0.00 |
| 05/17/01 | FEDEX | 1011 | | | 86.72 | 31,909.42 | 0.00 | 86.72 | 0.00 |
| 05/17/01 | EDSA | 1012 | | | 7,519.25 | 24,390.17 | 0.00 | 7,519.25 | 0.00 |
| 05/17/01 | HERNANDEZ TACORONTE | 1013 | | | 2,800.00 | 21,590.17 | 0.00 | 2,800.00 | 0.00 |
| 05/17/01 | NATIONAL INSURANCE | 1014 | | | 3,365.40 | 18,224.77 | 0.00 | 3,365.40 | 0.00 |
| 05/17/01 | BATELCO | 1015 | | | 848.09 | 17,376.68 | 0.00 | 848.09 | 0.00 |
| 05/17/01 | KOMATSU LATIN AMERICAN | 1016 | | | 116.32 | 17,260.36 | 0.00 | 116.32 | 0.00 |
| 05/22/01 | BIG GAME FISHING CLUB | 1017 | | | 13,806.25 | 3,454.11 | 0.00 | 13,806.25 | 0.00 |
| 05/17/01 | AMERI-HOUSING | 1018 | | | 4,269.40 | -815.29 | 0.00 | 4,269.40 | 0.00 |
| 05/17/01 | JOBBERS EQUIMENT | 1019 | | | 933.05 | -1,748.34 | 0.00 | 933.05 | 0.00 |
| 05/17/01 | GABRIEL ALFONSO | 1020 | | | 1,486.40 | -3,234.74 | 0.00 | 1,486.40 | 0.00 |
| 05/17/01 | GABRIEL ALFONSO (PAYROLL) | 1021 | | | 8,836.36 | -12,071.10 | 0.00 | 8,836.36 | 0.00 |
| 05/17/01 | KELLY TRACTOR | 1022 | | | 1,230.56 | -13,301.66 | 0.00 | 1,230.56 | 0.00 |
| 05/17/01 | CCL CONSULTANTS INC | 1023 | | | 525.98 | -13,827.64 | 0.00 | 525.98 | 0.00 |
| 05/22/01 | OCEANIC STEVEDORING CO | 1024 | | | 3,224.25 | -17,051.89 | 0.00 | 3,224.25 | 0.00 |
| 05/22/01 | LAW GIBB GROUP | 1025 | 2 | | 13,647.01 | -17,051.89 | 0.00 | 0.00 | 13,647.01 |
| 05/22/01 | KELLY TRACTOR | 1026 | | | 2,398.64 | -19,450.53 | 0.00 | 2,398.64 | 0.00 |
| 05/22/01 | PORT CONSOLIDATED | 1027 | | | 20,621.00 | -40,071.53 | 0.00 | 20,621.00 | 0.00 |
| 05/22/01 | KOMATSU LATIN AMERICAN | 1028 | | | 2,293.68 | -42,365.21 | 0.00 | 2,293.68 | 0.00 |
| 05/22/01 | B V OIL COMPANY | 1029 | | | 32,000.00 | -74,365.21 | 0.00 | 32,000.00 | 0.00 |
| 05/22/01 | KOMATSU LATIN AMERICAN | 1030 | | | 4,890.08 | -79,255.29 | 0.00 | 4,890.08 | 0.00 |
| 05/22/01 | INSURANCE MANAGEMENT | 1031 | | | 34,560.00 | -113,815.29 | 0.00 | 34,560.00 | 0.00 |
| 05/22/01 | B C I | 1032 | | | 10,881.73 | -124,697.02 | 0.00 | 10,881.73 | 0.00 |
| 05/22/01 | GALFO CONTRACTOR | 1033 | | | 3,936.19 | -128,633.21 | 0.00 | 3,936.19 | 0.00 |
| 05/22/01 | B C I | 1034 | | | 4,491.89 | -133,125.10 | 0.00 | 4,491.89 | 0.00 |
| 05/22/01 | B C I | 1035 | | | 32,000.00 | -165,125.10 | 0.00 | 32,000.00 | 0.00 |
| 05/22/01 | WILCO ELECTRICAL | 1036 | | | 3,700.64 | -168,825.74 | 0.00 | 3,700.64 | 0.00 |
| 05/22/01 | OPAC BAHAMAS | 1037 | | | 2,873.00 | -171,698.74 | 0.00 | 2,873.00 | 0.00 |
| 05/25/01 | GABRIEL ALFONSO | 1038 | | | 18,400.00 | -190,098.74 | 0.00 | 18,400.00 | 0.00 |
| 05/25/01 | ORAL ELLIS | 2727 | | | 1,486.40 | -191,585.14 | 0.00 | 1,486.40 | 0.00 |
| 05/25/01 | BASIL ROLLE | 2728 | | | 486.40 | -192,071.54 | 0.00 | 486.40 | 0.00 |
| 05/25/01 | MATHA ROLLE | 2729 | | | 338.10 | -192,409.64 | 0.00 | 338.10 | 0.00 |
| 05/25/01 | ELIO GARCIA | 2730 | | | 1,310.40 | -193,720.04 | 0.00 | 1,310.40 | 0.00 |
| 05/25/01 | ALFREDO GARCIA | 2731 | | | 418.40 | -194,138.44 | 0.00 | 418.40 | 0.00 |
| 05/25/01 | MANUEL DE SALAMANCA | 2732 | | | 538.40 | -194,676.84 | 0.00 | 538.40 | 0.00 |
| 05/25/01 | JORGE LORENZO | 2733 | | | 324.57 | -195,001.41 | 0.00 | 324.57 | 0.00 |
| 05/25/01 | RAMON DE LA ROSA | 2734 | | | 538.40 | -195,539.81 | 0.00 | 538.40 | 0.00 |
| 05/25/01 | WARREN GLASS | 2735 | | | 418.40 | -195,958.21 | 0.00 | 418.40 | 0.00 |
| 05/25/01 | CURTIS ROLLE | 2736 | | | 538.40 | -196,496.61 | 0.00 | 538.40 | 0.00 |
| 05/25/01 | | 2737 | | | 208.65 | -196,705.26 | 0.00 | 208.65 | 0.00 |

BIMINI BAY DEVELOP CO. LTD.
BANK RECONCILIATION-SOUTHERN SEC
ACC.# 0515004901
MAY 2001

| | |
|---|---:|
| Beginning Bank Balance | 0.00 |
| Deposits | 100,000.00 |
| Checks Written | 349,092.22 |
| Cancelled Checks | 25,816.39 |
| Funds Available - Book Balance | -223,275.83 |
| Outstanding Deposits | 100,000.00 |
| Outstanding checks | 323,275.83 |
| Ending Bank Balance | 0.00 |

| DATE | PAY TO | CK # | * | AMOUNT DEPOSIT | CHECK AMOUNT | BALANCE | OUTSTANDING DEPOSITS | OUTSTANDING CHECKS | VOID CHECKS |
|---|---|---|---|---:|---:|---:|---:|---:|---:|
| 05/25/01 | DOUGLAS SOUNDERS | 2738 | | | 309.12 | -197,014.38 | 0.00 | 309.12 | 0.00 |
| 05/25/01 | ARTURO OCHOA | 2739 | | | 471.40 | -197,485.78 | 0.00 | 471.40 | 0.00 |
| 05/25/01 | ERNESTO ESPINDOLA | 2740 | | | 338.10 | -197,823.88 | 0.00 | 338.10 | 0.00 |
| 05/25/01 | ANTONIO ESCALANTE | 2741 | | | 401.40 | -198,225.28 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | JOAQUIN FLORES | 2742 | | | 401.40 | -198,626.68 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | JOSE DE JESUS SALDANA | 2743 | | | 347.76 | -198,974.44 | 0.00 | 347.76 | 0.00 |
| 05/25/01 | ALFREDO CAMARILLO | 2744 | | | 347.76 | -199,322.20 | 0.00 | 347.76 | 0.00 |
| 05/25/01 | GUSTAVO OCHOA | 2745 | | | 347.76 | -199,669.96 | 0.00 | 347.76 | 0.00 |
| 05/25/01 | VICTOR ROLDAN | 2746 | | | 347.76 | -200,017.72 | 0.00 | 347.76 | 0.00 |
| 05/25/01 | RICHARD SMITH | 2747 | | | 278.20 | -200,295.92 | 0.00 | 278.20 | 0.00 |
| 05/25/01 | ESMERALDA SMITH | 2748 | | | 86.94 | -200,382.86 | 0.00 | 86.94 | 0.00 |
| 05/25/01 | CAROLYN ROLLE | 2749 | | | 38.64 | -200,421.50 | 0.00 | 38.64 | 0.00 |
| 05/22/01 | GABRIEL ALFONSO | 2750 | | | 1,486.40 | -201,907.90 | 0.00 | 1,486.40 | 0.00 |
| 05/25/01 | ORAL ELLIS | 2751 | | | 486.40 | -202,394.30 | 0.00 | 486.40 | 0.00 |
| 05/25/01 | BASIL ROLLE | 2752 | | | 338.10 | -202,732.40 | 0.00 | 338.10 | 0.00 |
| 05/25/01 | MATHA ROLLE | 2753 | | | 1,204.40 | -203,936.80 | 0.00 | 1,204.40 | 0.00 |
| 05/25/01 | ELIO GARCIA | 2754 | | | 826.40 | -204,763.20 | 0.00 | 826.40 | 0.00 |
| 05/25/01 | ALFREDO RUIZ | 2755 | | | 826.40 | -205,589.60 | 0.00 | 826.40 | 0.00 |
| 05/25/01 | JORGE LORENZO | 2756 | | | 826.40 | -206,416.00 | 0.00 | 826.40 | 0.00 |
| 05/25/01 | RAMON DE LA ROSA | 2757 | | | 826.40 | -207,242.40 | 0.00 | 826.40 | 0.00 |
| 05/25/01 | WARREN GLASS | 2758 | | | 526.40 | -207,768.80 | 0.00 | 526.40 | 0.00 |
| 05/25/01 | CURTIS ROLLE | 2759 | | | 278.20 | -208,047.00 | 0.00 | 278.20 | 0.00 |
| 05/25/01 | DOUGLAS SOUNDERS | 2760 | | | 514.40 | -208,561.40 | 0.00 | 514.40 | 0.00 |
| 05/25/01 | ARTURO OCHOA | 2761 | | | 471.40 | -209,032.80 | 0.00 | 471.40 | 0.00 |
| 05/25/01 | JOAQUIN FLORES | 2762 | | | 401.40 | -209,434.20 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | JOSE DE JESUS SALDANA | 2763 | | | 401.40 | -209,835.60 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | ALFREDO CAMARILLO | 2764 | | | 401.40 | -210,237.00 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | GUSTAVO OCHOA | 2765 | | | 401.40 | -210,638.40 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | VICTOR ROLDAN | 2766 | | | 391.40 | -211,029.80 | 0.00 | 391.40 | 0.00 |
| 05/25/01 | RICHARD SMITH | 2767 | | | 231.84 | -211,261.64 | 0.00 | 231.84 | 0.00 |
| 05/25/01 | ESMERALDA SMITH | 2768 | | | 86.94 | -211,348.58 | 0.00 | 86.94 | 0.00 |
| 05/25/01 | ANTONIO ESCALANTE | 2769 | | | 401.40 | -211,749.98 | 0.00 | 401.40 | 0.00 |
| 05/25/01 | VOID | 2770 | | | 0.00 | -211,749.98 | 0.00 | 0.00 | 0.00 |
| 05/25/01 | VOID | 2771 | | | 0.00 | -211,749.98 | 0.00 | 0.00 | 0.00 |
| 05/31/01 | EDUARDO ABED | 2772 | 2 | | 11,025.85 | -211,749.98 | 0.00 | 0.00 | 11,025.85 |
| 05/31/01 | BIG FIVE FISHING TOURN. | 2773 | | | 500.00 | -212,249.98 | 0.00 | 500.00 | 0.00 |
| 05/31/01 | GABRIEL ALFONSO | 2774 | | | 3,000.00 | -215,249.98 | 0.00 | 3,000.00 | 0.00 |
| 05/31/01 | GABRIEL ALFONSO | 2775 | | | 8,025.85 | -223,275.83 | 0.00 | 8,025.85 | 0.00 |

# EXHIBIT J

Image reflects quality of original submission



# SOUTHERN SECURITY BANK
P.O. Box 6699   Hollywood, FL 33081-0699
Phone 954-985-3900

 

06-29-01    30    PAGE   1

```
                                    VISIT OUR NEW OFFICE  PHONE(305)358-1355
                                    1000 BRICKELL AVE. #905   MIAMI, FL.

                        15 004 901
                               3
                              41


     BIMINI BAY DEVELOPMENT
     COMPANY, LTD
     529 SOUTH FLAGLER DR APT 27F
     WEST PALM BEACH  FL 33401                                          44
```

```
            ***************************
            *  REGULAR CHECKING BUSINESS   *
            ***************************
15 004 901 BIMINI BAY DEVELOPMENT                        3CR    41DR  ENCLOSURES
```

| LAST STATEMENT | CHECKS | DEPOSITS | SC | CB INT PAID CUR STATEMENT |
|---|---|---|---|---|
| 05-31-01 | 44 | 3 | | 06-29-01 |
| 180.82- | 273,837.44 | 550,000.00 | | 275,981.74 |

| CHECKS | CHECKS | CHECKS | DEPOSITS | DATE | BALANCE |
|---|---|---|---|---|---|
| 30.00EW | 18,400.00 | 3,700.64 | 50,000.00 DP | | |
| 3,936.19 | 4,491.89 | 32,000.00 | | 06-01 | 12,739.54- |
| 30.00EW | 4,890.08 | | | 06-04 | 17,659.62- |
| 30.00EW | 3,000.00 | 8,025.85 | 250,000.00 DP | | |
| 32,000.00 | 34,560.00 | | | 06-05 | 154,724.53 |
| 500.00 | | | | 06-06 | 154,224.53 |
| 2,293.68 | | | | 06-07 | 151,930.85 |
| 20,621.00 | | | | 06-08 | 131,309.85 |
| 5,440.88 | 6,000.00 | 13,806.25 | | 06-12 | 106,062.72 |
| 2,873.00 | | | | 06-13 | 103,189.72 |
| 178.07 | | | | 06-18 | 103,011.65 |
| 531.44 | 4,296.95 | | | 06-20 | 98,183.26 |
| 21.25 | 34.22 | 600.00 | | | |
| 644.19 | 3,000.00 | 4,320.00 | | | |
| 4,956.64 | 5,879.60 | | | 06-21 | 78,727.36 |
| 100.30 | 1,048.28 | 2,910.40 | | 06-22 | 74,668.38 |
| 144.33 | 2,002.89 | 2,240.00 | | 06-25 | 70,281.16 |
| 10,881.73 | | | | 06-27 | 59,399.43 |
| 13,647.01 | 300.00 | 330.79 | | | |
| 8,259.80 | | | | 06-28 | 36,861.83 |
| 5,000.00 | 5,880.09 | | 250,000.00 DP | 06-29 | 275,981.74 |

```
                - - - C H E C K S   B Y   N U M B E R - - -
```

| HK # | AMOUNT | CHK # | AMOUNT | CHK # | AMOUNT | CHK # | AMOUNT |
|---|---|---|---|---|---|---|---|
| | 30.00EW | | 32,000.00 | 2775 | 8,025.85 | 2785 | 300.00 |
| | 18,400.00 | | 34,560.00 | 2776 | 2,910.40 | 2786 | 4,320.00 |
| | 3,700.64 | | 2,293.68 | 2778* | 34.22 | 2787 | 4,296.95 |
| | 3,936.19 | | 13,806.25 | 2779 | 330.79 | 2789* | 100.30 |
| | 4,491.89 | | 2,873.00 | 2780 | 5,879.60 | 2791* | 531.44 |
| | 32,000.00 | | 10,881.73 | 2781 | 144.33 | 2792 | 8,259.80 |
| | 30.00EW | 1027 | 20,621.00 | 2782 | 600.00 | 2793 | 2,240.00 |
| | 4,890.08 | 2773* | 500.00 | 2783 | 4,956.64 | 2794 | 644.19 |
| | 30.00EW | 2774 | 3,000.00 | 2784 | 178.07 | 2795 | 21.25 |

```
                        C O N T I N U E D
```

PLEASE EXAMINE AT ONCE. SEE REVERSE SIDE FOR AN EASY RECONCILIATION FORM AND EXPLANATION CODES.



# SOUTHERN SECURITY BANK

P.O. Box 6699   Hollywood, FL 33081-0699
Phone 954-985-3900

06-29-01



30



PAGE   2

VISIT OUR NEW OFFICE  PHONE(305)358-1355
1000 BRICKELL AVE. #905   MIAMI, FL.

15 004 901

BIMINI BAY DEVELOPMENT
COMPANY, LTD
529 SOUTH FLAGLER DR APT 27F
WEST PALM BEACH  FL 33401

| CHK # | AMOUNT | CHK # | AMOUNT | CHK # | AMOUNT | CHK # | AMOUNT |
|-------|--------|-------|--------|-------|--------|-------|--------|
| 2796 | 3,030.00 | 2798 | 6,000.00 | 2800 | 1,048.28 | 2872* | 5,000.00 |
| 2797 | 2,032.89 | 2799 | 5,440.88 | 2848* | 13,647.01 | 2873 | 5,880.09 |

- - - D E S C R I P T I V E   T R A N S A C T I O N S - - -

| | | | |
|---|---|---|---|
| OVERDRAFT FEE | WITHDRAWAL | 06-01 | 30.00 |
| OVERDRAFT FEE | WITHDRAWAL | 06-04 | 30.00 |
| OVERDRAFT FEE | WITHDRAWAL | 06-05 | 30.00 |

AVERAGE BALANCE
98,265.95
NUMBER OF DAYS IN STATEMENT PERIOD   30

# EXHIBIT K

Image reflects quality of original submission

# RAV BAHAMAS LIMITED
# ACCOUNTS PAYABLE
## 05/10/01

| VENDORS | DESCRIPTION | AMOUNT | PAYMENT |
|---|---|---|---|
| Hernandez and Tacoronte | Accounting Service | 2,800.00 | ✓ |
| C.C.L. | Professional Services | 3,224.25 | |
| Bimini Big Game Fishing Club | Diesel May | 5,640.65 | ✓ Copia y destloce por |
| Oceanic Stevedoring Company | Ship Line Service | 18,647.01 | entregar. |
| T. Square | | 462.48 | ✓ |
| Insurance Management | Ser.Insurance | 10,881.73 | |
| Numeredix | Prints | 58.46 | ✓ |
| Caribbean  Land Surveyor | Surveyor | 12,870.00 | ✓ |
| B.C.I. | Insurance | 3,936.19 | |
| LawGibb Group | Lab Test | 2,398.64 | |
| Dade Builders Contractors, Inc. | Construction Materilas | 5,261.76 | ✓ |
| National  Insurance | Dec/00-Jan-Feb/01 | 3,365.40 | ✓ |
| Galfo Contractor | Payment Kelly Tractor | 4,491.89 | |
| B.C.I. | Rent Komatsu Equipmnts | 32,000.00 | |
| B.C.I. | Miscellaneous Parts, etc | 3,700.61 | |
| C. Port Consolidated | Oil | 2,293.68 | |
| H.M.C. Helicopters | Helicopters Services | 5,617.50 | ✓ |
| Rigoberto Marrero-Refund | Refund | 384.83 | ✓ |
| Komatsu Latin America | PC 800 Rental April & May | 32,000.00 | |
| Komatsu Latin America | Parts | 116.32 | ✓ |
| B.V.Oil Company | Diesel | 4,890.08 | |
| Wings of Charm | Air Transport | 513.50 | ✓ |
| Bimini Shipping Inc. | Freights | 2,537.11 | ✓ |
| Rodrigo Cruz | Petty Cash | 621.19 | ✓ |
| Home Depot | Water Heater (Labors Bldg) | 156.56 | |
| Union Tires | Tires | 267.90 | |
| Fedex | Courier | 86.72 | ✓ |
| WILCO Electrical Contracting | Temp Electrical Labor | 2,873.00 | |
| J.H.Manucy ,Ing. | Surveyor | 760.00 | |
| Bahamas Telecomunications Corp. | Phone  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 | 1,393.83 | ✓ |
| Bahamas Telecomunications Corp. | Phone  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 | 139.70 | ✓ |
| EDSA | | 7519.25 | |
| OPAC | Nomina anterior | 13,111.50 | ✓ |
| **HAVE NOT BEEN RECEIVED BY RAV** | | | |
| Kelly Tractor Co. | Parts & Repair Piston 235 | 20,621.01 | |
| Carvi Express | Delivery of Bushings for Buc | 45.00 | |
| Jobbers Equipment | Upgrade and 2 new hand pun | 933.05 | ✓ |
| Kelly Tractor Co. | Heavy Equipment Parts | 1,230.56 | ✓ |
| Payroll Labor Force | Labor Force | 13,111.50 | |
| Public Treasury | Aduanas. | 23,455.54 | ✓ |
| Batelco | Cel - Gabriel. | 848.09 | ✓ |

faltan $150,000 ⁼ aprox.

URGE:

# CIVIL COVER SHEET

05-21013
CIV-SEITZ

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM).

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MAXIMO HADDAD, an individual | RAV BAHAMAS, LTD, a foreign corporation, and GERARDO CAPO, an individual, |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Foreign National
(EXCEPT IN U.S. PLAINTIFF CASES)

*Dade 05cv21013 Se. tz/McAlila,*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Miami-Dade County, Florida
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND OF CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Alexander Angueira, Esq.
Stearns Weaver Miller, et al.
150 West Flagler Street
Miami, FL 33130
(305) 789-3200

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

(DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
■ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ■ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Action to enforce Joint Venture Agreement and Accounting.

IVa.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B. FORFEITURE / PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | Property 21 USC 881 | | B ☐ 450 Commerce / ICC Rates / etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Product Liability ☐ 368 Asbestos Personal | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans (Excl. Veterans) | ☐ 340 Marine ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety / Health | ☐ 840 Trademark | ☐ 850 Securities / Commodities / Exchange |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability | ☐ 370 Other Fraud | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ■ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor / Mgmt. Relations B ☐ 730 Labor / Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC / DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| B ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing / Accommodation | **Habeas Corpus** ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions * A or B |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights * A or B | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
DEMAND (in excess of **$75,000**) Check YES only if demanded in complaint:
JURY DEMAND: ■ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE April 12, 2005

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. 919044   Amount: 250.00
Date Paid: 04/12/05   M/ifp: