UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-21013-CIV-SEITZ/McAliley

MAXIMO HADDAD,

          Plaintiff,

vs.

RAV BAHAMAS, LTD., a foreign corporation,
and GERARDO CAPO, an individual,

          Defendants.
_____/

## VERIFIED MOTION AND MEMORANDUM OF LAW
## FOR APPOINTMENT OF SPECIAL MASTER AND AN ACCOUNTING

Plaintiff Maximo Haddad ("Haddad"), pursuant to Rule 53 of the Federal Rules of Civil Procedure, moves for an order appointing a special master for the purposes of marshaling account information and conducting an accounting of Defendants RAV Bahamas, LTD. ("RAV") and Gerardo Capo ("Capo"). *See* Fed. R. Civ. P. 53(a)(B)(ii); *see also Ashemimry v. Ba Nafa,* 778 So.2d 495 (Fla. 5th DCA 2001)(appointing special master to perform accounting under Florida law).

### INTRODUCTION

Haddad commenced this action in early 2005. The Complaint alleges that Capo and RAV committed fraud in connection with their offer and sale of the stock of several companies which RAV and Capo promoted as the holding and development companies for Bimini Bay, a resort complex development, located on Bimini Island in the Bahamas. In addition to his securities fraud claims, Haddad has raised various state law claims for breach of contract, constructive trust, breach of fiduciary duties, specific performance and an accounting.

CASE NO. 05-21013-CIV-SEITZ/McAliley

In 2001, Haddad invested well over $6 million with Capo and RAV. Capo and RAV, for their parts, have taken Haddad's money and used his reputation to further the development of Bimini Bay, but have reneged on the delivery of securities and refused to provide Haddad any information or accounting of his investment. As this Court has previously noted, this is an uncomplicated commercial case:

> ... it doesn't take a rocket scientist to say: "Okay, we had a deal," and that you signed on the dotted line[,] that there is this Agreement. And if you gave me the money, and I was supposed to give you pieces of paper to reflect an interest in whatever is built, and I did not give it to you, I cannot change the facts to say: "Ooops, I put it on my books as a loan" . . . .it seems to me that these Defendants should be organizing themselves to resolve this case.

(Mot. Dismiss Hrg. Tr., 7:9-24, April 20, 2006). After months of motion practice, and a fourteen month appeal to the 11th Circuit, the case remains unresolved. The business of the Project, however, continues and Haddad remains excluded from participation in the Project's profits.

Again, of this the District Court noted at a preliminary hearing in this matter, "I really don't know what the Defendant's defense is, but I will tell you that its sounds like an injustice was done here," (Mot. Dismiss Hrg. Tr. 84:12-15, April 20, 2006), and "all I can say is that the man contributed 6.4 Million Dollars, and based on the Complaint, he has nothing to show for that." (Mot. Dismiss Hrg. Tr. 9:6-8, April 20, 2006). This motion seeks an accounting for precisely these reasons. An injustice was done: Mr. Haddad parted with over six million dollars and presently has "nothing to show for that." Accordingly, this motion seeks the appointment of a special master and

-2-

CASE NO. 05-21013-CIV-SEITZ/McAliley

an accounting to discover the extent of the injustice and to trace the uses to which Mr. Haddad's six million dollars have been put.

## STATEMENT OF MATERIAL FACTS

Gerardo Capo founded RAV[1] in the late 1990s to acquire and hold approximately seven hundred (700) acres of land situated on the northern portion of the Island of North Bimini in The Bahamas (the "Bimini Bay Property" or the "Property"). Capo and RAV completed the acquisition of the Property, which is now commonly referred to as "Bimini Bay." On July 31, 1997, the Government of the Commonwealth of The Bahamas (the "Bahamian Government") authorized RAV to develop a resort hotel, casino, golf course, private residences, and a number of other amenities and facilities on Bimini Bay (the "Bimini Bay Project," or the "Project"), and agreed to make certain tax concessions to promote the Project, which was expected to require approximately $100 Million in private capital to bring to completion, and was hoped to draw vacationers to the island and tax dollars to the Bahamian Treasury.

---

[1] RAV is a Bahamian entity with its principal place of business in Miami-Dade County, Florida. At a prior hearing, RAV's counsel disputed this fact. In the interest of resolving any dispute, we refer the court to Exhibits "A" through "D" to the Complaint. Exhibit "A" is a true and accurate copy of a RAV "Facsimile Transmittal Sheet," identifying RAV's Miami address. Exhibit "B" is a true and accurate copy of a page from the Bimini Bay website identifying RAV's Miami address as the location of the Bimini Bay "Sales Office." Exhibit "C" is a true and accurate copy of a July 18, 2001 letter on Bimini Bay letterhead, listing one of RAV's Miami addresses as the return address. Exhibit "D" is a true and accurate facsimile transmission from Wode Engineering, Inc. to RAV at a facsimile line with a "305" are code and referencing RAV's Miami address.
Capo, for his part, resides in Miami, Florida.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

CASE NO. 05-21013-CIV-SEITZ/McAliley

By 2001, nearly four years later, Capo and RAV had invested approximately $10 Million in the Project with little to show for the expenditures. The Bahamian Government began to question Capo's financial and administrative wherewithal and threatened to revoke RAV's development rights and tax concessions unless Capo and RAV demonstrated a greater commitment to the Project and secured additional funding.

With the Project faltering, and RAV's development rights in jeopardy, Capo quickly sought out additional investors to assuage the concerns of the Bahamian Government and revive his failing Project. Capo approached Maximo Haddad, a businessman and developer with experience in large-scale and complex construction projects, to secure additional capital. Capo and RAV persuaded Haddad to capitalize the faltering Project. As documented by an April 11, 2001 "Memorandum of Understanding" (the "MOU"), negotiated and executed in the State of Florida, Haddad agreed to fund $10 Million to the Project in exchange for fifty (50%) of the capital stock" of a number of companies Capo and RAV agreed to form, for the purposes of the pursuing the development of "Bimini Bay." A true and accurate copy of the MOU is attached hereto as Exhibit "A."

One such entity was earmarked to take title to approximately thirty-five (35) acres of the Property and develop Phase I of the Project, which would consist of single and multi-family residences, a marina, a utility plant, docks, and other amenities and facilities. Other entities were earmarked to take title to the remaining six hundred and sixty five (665) acres, which would comprise Phase II of the Project. *See* Exh. A, ¶ 4.

-4-

CASE NO. 05-21013-CIV-SEITZ/McAliley

On the date the MOU was executed, Haddad transferred $3.4 Million to RAV.[2] Over time Haddad, transferred additional funds and contributed time and energy to Capo and RAV, raising his contribution to over $6 Million. After accepting Haddad's $3.4 Million preliminary contribution and the additional funds and contributions, and using Mr. Haddad's reputation and wealth to preserve RAV's development rights, RAV and Capo failed to convey the Bimini Bay Property to the stipulated entities. Moreover, Capo and RAV excluded Haddad from the management of the Project and sold off parcels of the Bimini Bay Property without consulting with Mr. Haddad or sharing the profits therefrom. As a result of RAV and Mr. Capo's conduct, Mr. Haddad has effectively been "squeezed out" of the Bimini Bay Project.

## A SPECIAL MASTER SHOULD BE APPOINTED TO MARSHALL ACCOUNT INFORMATION AND PERFORM AN ACCOUNTING

Fed. R. Civ. P. 53 authorizes a district court to appoint a special master where there is the "need to perform an accounting." Fed. R. Civ. P. 53(1)(B)(ii). Reference to a master is within the discretion of the District Court, *Schwimmer v. United States*, 232 F.2d 855 (8th Cir. 1956), and "[t]he discretion is particularly broad where difficult accounting problems are involved." *Southern Agency Co. v. LaSalle Cas. Co.*, 393 F.2d 907 (8th Cir. 1968)(citing *American Cyanamid Company v. Ellis-Foster Company*, 298 F.2d 244 (3d Cir. 1962), *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721 (5th Cir. 1961); *Troyak v. Enos*, 204 F.2d 536 (7th Cir. 1953)).

---

[2] The MOU required a transfer of only a portion of the $10 Million total investment prior to the issuance of the subject stock. *See* Exh. A, ¶8.

-5-

CASE NO. 05-21013-CIV-SEITZ/McAliley

In light of the verified facts recited above, Haddad is entitled to an accounting as a matter of law. *See, e.g., Ashemimry v. Ba Nafa,* 778 So.2d 495 (Fla. 5th DCA 2001)(appointing special master to perform accounting under Florida law). In *Ashemimry v. Ba Nafa*, 778 So.2d 495 (Fla. 5th DCA 2001), a case substantively indistinct from the present dispute, Florida's Fifth District Court of Appeals held that an investor is entitled to an accounting under Florida law to remedy a stock promoter's fraudulent inducement of investment capital and to trace that capital.

Like RAV and Capo here, the appellant in the *Ashemimry* case, Nasir Ashemimry, solicited investments in several off-shore corporations allegedly formed for the purposes of holding real estate and developing hotel properties. *Ashemimry*, 778 So.2d at 497. Ashemimry persuaded Shiek Ba Nafa, a Saudi investor, to "invest over six million dollars" in Ashemimry's proposition. The trial court found that "Ba Nafa gave Ashemimry large sums of money to invest . . . and that Ashemimry owed Ba Nafa a fiduciary duty." [3] *Id.* at 498. "Given these findings," the appellate court held, "the

---

[3] That RAV and Capo owed Haddad fiduciary duties is not open to reasonable dispute. RAV and Capo promoted the stipulated entities and solicited Haddad's investment in said entities:

> It is thoroughly settled law in this state and elsewhere that promoters of a corporation stand in a fiduciary relation to the company to be organized, and those who subscribe for its stock . . . . And where they betray their trust and by fraudulent means divert to their own use funds placed in their hands for the promotion of the company, they are guilty of such fraud as will deprive them of the right to compensation for services rendered in the organization proceedings.

*See Earle R. Hanson & Assoc. v. Farmers Cooperative Creamery Co.*, 403 F.2d 65, 70 (8th Cir. 1968)(quoting *Vinie v. Harriet State Bank*, 178 N.W. 170 (Minn. 1920)). *See also* 1A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations*, § 192 (2006)("Promoters of a corporation occupy a special fiduciary relation to shareholders whom they induce to buy stock.").

CASE NO. 05-21013-CIV-SEITZ/McAliley

court did not err in ordering the accounting and appointing a special master to perform the accounting of Ashemimry and his corporations." *Id.* Haddad should be treated no differently.

Like Ashemimry, RAV and Capo extracted from Haddad "over six million dollars" in exchange for the promise of interests in real estate management and holding companies. They delivered nothing. Under the authority of the *Ashemimry* decision, Haddad is entitled to an accounting, as a matter of law, of the sums he invested with RAV and Capo, and the uses to which RAV and Capo have put his sizeable investment contributions.

Plaintiff would seek an accounting of the following areas:

a. Defendant's use of and accounting for any monies provided by Plaintiff to Defendants, including a review of bank statements and internal books and records;

b. Analysis of the Bimini Bay Development Project, including but not limited to a review of any internal rates of return, the budget or business plans for the Project, the financing structure for the Project, review of any distributions or disbursements to any owner or purported owner, an accounting of any extraordinary payments or transfers of money, the current status of the project, and/or projections for future development;

c. Review of all records reflecting ownership of and/or development agreements for the Project; and

d. Any relief or review the Special Master deems necessary for completion of his appointment.

CASE NO. 05-21013-CIV-SEITZ/McAliley

Further, Plaintiff suggests Barry Mukamal of Rachlin Cohen of Miami, Florida be selected as the Special Master.

## CONCLUSION

For all the foregoing reasons, Haddad respectfully requests this Court issue an order appointing a special master for the purposes of collecting account information and conducting an accounting of Capo and RAV and the funds Haddad invested with said defendants.

## VERIFICATION

I, Maximo Haddad, do hereby declare under the penalty of perjury that the facts set forth in the Statement of Material Facts contained herein are true and correct.

Executed on this ___ day of September, 2007.

By:_____
MAXIMO HADDAD

CASE NO. 05-21013-CIV-SEITZ/McAliley

Further, Plaintiff suggests Barry Mukamal of Rachlin Cohen of Miami, Florida be selected as the Special Master.

## CONCLUSION

For all the foregoing reasons, Haddad respectfully requests this Court issue an order appointing a special master for the purposes of collecting account information and conducting an accounting of Capo and RAV and the funds Haddad invested with said defendants.

## VERIFICATION

I, Maximo Haddad, do hereby declare under the penalty of perjury that the facts set forth in the Statement of Material Facts contained herein are true and correct.

Executed on this 11 day of September, 2007.

By: _____
MAXIMO HADDAD

-8-

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Miami, FL 33130 • 305-789-3200

CASE NO. 05-21013-CIV-SEITZ/McAliley

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has conferred in good faith with opposing counsel regarding the subject matter of this motion, and the relief requested herein, but has been unable to reach an agreement with opposing counsel.

Dated: September 11, 2007  Respectfully submitted,
Miami, Florida

s/Alexander Angueira
ALEXANDER ANGUEIRA (Florida Bar No. 0716091)
aangueira@swmwas.com
CHRISTOPHER L. BARNETT
Florida Bar No. 0360510
cbarnett@swmwas.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Suite 2200, Museum Tower
150 West Flagler Street
Miami, Florida 33130
Telephone:    (305) 789-3200
Facsimile:    (305) 789-3395

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Facsimile and U.S. Mail on this **11th day of September, 2007**, on all counsel or parties of record on the attached service list.

s/Alexander Angueira
ALEXANDER ANGUEIRA

-9-

CASE NO. 05-21013-CIV-SEITZ/McAliley

## SERVICE LIST
## CASE NO. 05-21013-CIV-SEITZ/McAliley

Stanley H. Wakshlag, Esq.
swakshlag@kennynachwalter.com
Kenny Nachwalter Seymour Arnold Critchlow & Spector, P.A.
1100 Miami Center
201 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Attorney for RAV Bahamas and Gerardo Capo

Paul A. Shelowitz, Esq.
paul.shelowitz@akerman.com
Akerman Senterfitt
SunTrust International Center
One S.E. Third Avenue, 28th Floor
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Attorney for RAV Bahamas and Gerardo Capo

Paul H. Bass, Esq.
phb57th@aol.com
Paul H. Bass, P.A.
Datran Tower II, Suite 1509
9130 South Dadeland Blvd.
Miami, FL 33156
Telephone: (305) 670-4191
Facsimile: (305) 670-5596
Attorney for RAV Bahamas and Gerardo Capo

G:\W-LIT\36538\005\Mot_accounting.2.wpd