UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-21013-CIV-SEITZ/O'SULLIVAN

MAXIMO HADDAD, an individual,

       Plaintiff,

v.

RAV BAHAMAS, LTD., a foreign
corporation, and GERARDO CAPO,
an individual,

       Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS*, AND DENYING WITHOUT PREJUDICE PLAINTIFF'S VERIFIED MOTION FOR APPOINTMENT OF A SPECIAL MASTER AND AN ACCOUNTING

THIS CAUSE is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint on the Grounds of *Forum Non Conveniens* [DE 94] and Plaintiff's Verified Motion for Appointment of a Special Master and an Accounting [DE 89]. Defendants Gerardo Capo ("Capo") and RAV Bahamas Ltd. ("RAV") argue that the Bahamian legal system is the only forum that can construe the laws that govern the ultimate relief Plaintiff seeks, and therefore, the Court should dismiss this action under the doctrine of *forum non conveniens*. Plaintiff opposes the dismissal and also seeks the appointment of a special master to conduct an accounting of both Defendants. Having reviewed the motions, the responses and the replies thereto, the entire factual record and the relevant legal authorities, Defendants' *forum non conveniens* motion is denied because the Southern District of Florida is a proper forum, and Plaintiff's accounting motion is denied with leave to re-file it once he has established his right to an accounting.

I.     **PROCEDURAL HISTORY**

Plaintiff initiated this case on April 12, 2005 alleging that Defendants breached their fiduciary duties in relation to a real estate development deal in The Bahamas. (*See* DE 1.) On June 30, 2005, RAV moved to dismiss the Complaint for lack of subject matter jurisdiction arguing that there was not complete diversity because both Plaintiff and Defendant RAV were foreign citizens. (*See* DE 12.) However, before RAV's

motion to dismiss was fully briefed, Plaintiff filed an Amended Complaint adding a claim for securities fraud under Rule 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). (*See* DE 18.) Both Defendants moved to dismiss the Amended Complaint, but this time on grounds that Plaintiff had failed to state a claim for securities fraud. (*See* DE 28.) On November 21, 2005, the Court dismissed the Amended Complaint holding that Plaintiff had failed to allege sufficient facts required by the securities laws, but granted leave to re-plead if Plaintiff could establish a violation of the federal securities laws. (*See* DE 45.)

On December 27, 2005, Plaintiff filed a Second Amended Complaint ("SAC") attempting to add the requisite facts and Defendants' again moved to dismiss for failure to state a claim for securities fraud. (*See* DE 48, 54.) On May 10, 2006, after hearing oral argument, the Court granted Defendants' motion to dismiss the SAC finding that Plaintiff had failed to state a claim for securities fraud under Rule 10(b) of the Exchange Act. (*See* DE 68.) Specifically, the Court held that the "economic realities of the parties' business relationship was a joint venture interest that is not governed by the federal securities laws," and therefore, Plaintiff's claim did not raise a federal question for jurisdictional purposes. (*Id.*) The Eleventh Circuit reversed and remanded the case holding that given the broad definition of a "security" under federal securities laws and the fact that the Court must take all the allegations in the SAC as true, the SAC should have survived a motion to dismiss. (*See* DE 79.)

Upon remand, Defendants again moved to dismiss the SAC but this time on the basis of *forum non conveniens*. (*See* DE 94.) The Court now turns to this motion.

**II.    FACTUAL BACKGROUND**

This dispute arises from a real estate development partnership "gone bad." Capo, a citizen and resident of Miami-Dade County, Florida, founded RAV in the late 1990's to develop approximately seven hundred acres of land situated on North Bimini, in The Bahamas. (SAC ¶¶ 3, 9.) RAV is a Bahamian company, incorporated and existing under the laws of the Commonwealth of The Bahamas with its principal

place of business with several offices in Miami-Dade County.[1] (*Id.* ¶ 4.) RAV is also a constituent of the "Capo Group" group of companies, which Capo controls from his Miami-Dade County offices. (*Id.*) Capo owns approximately 85% of the outstanding shares of RAV with the remaining shares owned by Capo's family members.

Defendants intended to develop the Bahamian land into residential units, a resort hotel and other tourist projects on the property (the "Bimini Bay Project" or the "Project"). (*Id.* ¶ 10.) In July 1997, the Bahamian Government approved RAV's plans to develop the Bimini Bay Project and entered into a development agreement with RAV, known as the "Heads of Agreement." (*Id.*) However, in early 2001, the Bahamian Government threatened to revoke the Heads of Agreement and RAV's development rights because it believed the Project was undercapitalized. (*See id.* ¶ 11.) To alleviate the Bahamian Government's concerns, Capo solicited Plaintiff to invest in the Project. (*Id.* ¶ 13.) Plaintiff is an international businessman and a citizen and resident of Panama City, Panama, who alleges that he resided in Palm Beach County, Florida from approximately April 1997 to 2003. (*Id.* ¶ 2.) In the months following their initial meeting, Capo and Plaintiff negotiated the terms of their joint venture. (*Id.* ¶ 15.) Following negotiations, Defendants and Plaintiff agreed to a joint venture strategy, which the parties memorialized in an April 11, 2001 Memorandum of Understanding ("MOU") at Plaintiff's residence in Palm Beach, Florida. (*Id.* ¶¶ 16-17; *Id.* Ex. E.)

Pursuant to the MOU, Plaintiff agreed, among other things, to invest $10 million in exchange for a fifty percent equity stake in the Project. (*Id.* ¶ 16.) The MOU contemplated that RAV would transfer its interest in the Bimini Bay Project to several to-be-created companies, which RAV and Plaintiff would jointly

---

[1] Plaintiff has attached several documents to the SAC suggesting that RAV has multiple offices in the Miami-Dade area, including: (1) a RAV Bahamas Ltd. facsimile transmittal sheet with the address 1150 NW 72nd Ave., PH2, Miami, Florida 33126; (2) a brochure listing the Bimini Bay Resort sales office address as 1150 NW 72nd Ave., PH, Miami, Florida 33126; (3) a letter to a water and sewage company written on behalf of RAV by Vice President Sidney Z. Brodie sent from the address 1414 NW 107th Ave., Suite 400, Miami, Florida 33172; (4) a letter from Wade Engineering, Geotechnical Engineering Consultants to RAV Bahamas Ltd. sent to the following address 1414 NW 107th Ave., Suite 409, Miami, Florida 33172. (SAC, Exs. A-D.)

own, and of which they would receive equal shares. (*See id.* ¶ 19, *Id.* Ex. E ¶¶ 5, 7.)[2] In phase I of the project, the joint venture was to take title to approximately thirty-five (35) acres of property in The Bahamas to develop single and multi-family residences, a marina, a utility plan, docks and other amenities and facilities. (*Id.* ¶ 19; Ex. E ¶ 4-5.) In phase II, other entities which the joint venture would own would take title to the remaining six hundred and sixty five (665) acres of land. (*Id..)*

After the execution of the MOU, Defendants set out to satisfy the Bahamian Government's concerns about the project and to obtain the Bahamian Government's approval of Plaintiff. (*Id.* ¶ 23.) The law firm of Alexiou, Knowles & Co. acted as counsel for the joint venture project. (*Id.* Ex. G) On September 27, 2001, the Office of the Prime Minister approved of Plaintiff's participation as a partner in the joint venture agreement with RAV. (*Id.* Ex. J at 1.) Following the Prime Minister's approval, the parties, through Alexiou, Knowles & Co., began negotiating a new Heads of Agreement with the Bahamian Government. (*Id.* ¶ 29.) The parties continued their negotiations through early 2004. (*Id.* ¶ 29.) Between 2001 and 2004, Capo routinely briefed Plaintiff on the status of the Bimini Bay Project, indicating that the Project was proceeding according to plan, that the transaction documents were still being prepared, and that Plaintiff's investment was secure and producing returns. (*Id.* ¶ 32.) Plaintiff continued to make capital contributions to the Project. (*Id.* ¶¶ 34-36.)

To this day, Defendants have not created the stipulated entities as agreed under the MOU. (*Id.* ¶ 42.) Rather, Defendants have sold off parcels of the Bimini Bay Project without sharing the profits therefrom and have siphoned off Plaintiff's investment for unrelated personal uses. (*Id.* ¶¶ 42-43.) In February 2005, Plaintiff demanded an accounting and a review of the Project's books and records to determine his share of the profits from his investment. (*Id.* ¶ 47.) At that time, Capo refused to open the books and stated that Plaintiff held no stake in the Project. (*Id.*) Capo further instructed Plaintiff that Defendants treated his

---

[2] Capo was to make arrangements to introduce Plaintiff to the Prime Minister of The Bahamas as his partner in the Project and to obtain all necessary approvals for the transfer of all rights under the Heads of Agreement to the parties' newly formed Bahamian companies. (*Id.* Ex. E ¶ 9.)

investment as a loan in the Project's books, and that they never intended to create the stipulated entities, much less issue any stock. (*Id.*) Plaintiff then initiated this lawsuit.

## III. *FORUM NON CONVENIENS*

The *forum non conveniens* principle gives a court the discretion to decide whether to exercise jurisdiction over a matter when a more convenient alternate forum is available. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-7 (1947). This tool "is to be favored" for ensuring that federal courts only hear "those cases where contacts with the American forum predominate." *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 n.10 (11th Cir. 1985). However, courts should apply the doctrine of *forum non conveniens* only in "rare cases...." *Gulf Oil Corp.*, 330 U.S. at 510. To prove that dismissal is warranted, a defendant has the burden of demonstrating that: (1) an adequate alternative forum is available; and (2) the private and public interest factors weigh in favor of dismissal. *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).[3]

### 1. The Availability Of An Alternative Forum

The first requirement for dismissal on the basis of *forum non conveniens* is the existence of a viable--i.e. adequate and available--alternative forum. *See Leon*, 251 F.3d at 1311. To be "available" is to be able to assert jurisdiction, typically satisfied by a defendant's amenability of service. *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001). To be "adequate" is to be capable of providing some relief for a plaintiff's claims. *See Tyco Fire and Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 865 (11th Cir. 2007). This "some relief" need not be perfect, so long as it is something more than "no remedy at all." *Satz*, 244 F.3d at 1283 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22 (1981).

Here, Defendants have presented evidence that Bahamian courts could conclude that they have jurisdiction over this action and the parties and that the parties are amenable to service in The Bahamas. Capo

---

[3] At the August 20, 2007 scheduling conference following remand, Defendants announced their intent to file a motion to dismiss on the grounds of *forum non conveniens*. While in some ways it might have been more efficient had the Defendants raised the issue in its initial motion, because the initial motion focused on the Court's alleged lack of jurisdiction, the Court was required to rule on jurisdiction before it could turn to any other basis for dismissal. Therefore, while the Court would have appreciated being alerted to Defendant's intended *forum non conveniens* arguments, the timeliness of the motion is not an issue.

and RAV have consented to Bahamian courts' exercise of personal jurisdiction over them and represent that they are amenable to, and will not challenge, service of process in any judicial or administrative forum in The Bahamas. (*See* DE 94, Ex. B & D.) Additionally, Defendants have submitted the declaration of Sir Joaquim C. Gonsalves-Sabola, a consultant to the Bahamian law firm of McKinney Bancroft and Hughes, who opines that Bahamian courts would have jurisdiction over the claims raised in the SAC. (*See* DE 94, Ex. E.) Indeed, actions involving federal securities claims are not immune from *forum non conveniens* dismissal. *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (dismissing Rule 10(b) claims on basis of *forum non conveniens*). Finally, Plaintiff has not disputed this evidence or any element of the "adequate alternative forum" factor. Therefore, Defendants have met their burden to demonstrate that an adequate alternative forum is available.

### 2. Private and Public Interests

The second requirement requires that the weight of private and public interests support disturbing the plaintiff's original choice of forum. *SME Racks Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 ("*SME Racks*") (citing *Gulf Oil Corp.*, 330 U.S. at 508). There is no definitive listing of either the private or public interests applicable here. The Supreme Court has said that it may include all "practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508. While the Eleventh Circuit has held that both public and private factors should be considered in all cases, *Leon*, 251 F.3d at 1311, the private factors should be approached initially with a strong presumption against disturbing the plaintiff's initial forum choice. *SME Racks*, 382 F.3d at 1100 (citing *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir.1983)). If the private factors are found to be in "equipoise or near equipoise," then a court should turn to the public factors to tip the balance. *Id.*

(a)   Private Interest Factors

In analyzing the private interest factors, important considerations are: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of view of premises, if a view would be appropriate to the action;

and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil Corp.*, 330 U.S. at 508. A court must weigh relative advantages and obstacles to fair trial. It is often said that a plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting on him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *See Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1305 (11th Cir. 2002). The strength of this presumption, however, appears to depend on the nationality and residence of the plaintiff. *See id.* Thus, this issue must be addressed before turning to the "convenience" factors. *See SME Racks*, 382 F.3d at 1101 (stating that a district court must "apply any presumption in its analysis" of the private interest factors).

    *(i)*    *The Presumption*

The presumption in favor the plaintiff's initial forum choice is at its strongest when the plaintiffs are citizens, residents, or corporations of this country. *SME Racks*, 382 F.3d at 1101 (citing *Leon*, 251 F.3d at 1311. The Eleventh Circuit has mandated that when a plaintiff is a citizen or resident of the United States, district courts "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *See SME Racks, Inc.*, 382 F.3d at 1101-02, n.6 (citation omitted) (stating that citizens or residents deserve somewhat more deference than foreign plaintiffs). A foreign plaintiff's choice of forum is a weaker presumption and receives far less deference. *Leon*, 251 F.3d at 1311. While a foreign plaintiff's choice of forum is entitled to less deference than the choice of a local plaintiff, dismissal on *forum non conveniens* grounds remains the exception rather than the rule. *P & D Intern. v. Halsey Pub. Co.*, 672 F. Supp. 1429, 1435 (S.D. Fla. 1987).

Here, the answer to this normally simple question is unclear. Defendants argue that Plaintiff's choice of forum is entitled to less deference because Plaintiff is not a resident of the United States, but rather a resident and citizen of Panama. In support of this contention, Defendants refer to the fact that in the initial Amended Complaint, Plaintiff represented that he was "an international businessman and developer, and a

-7-

resident of Panama City, Panama." Additionally, Defendants have submitted an affidavit from a Florida state divorce proceeding in which Plaintiff stated that he was not a resident of the state of Florida in 2003.[4] Finally, Defendants argue that Plaintiff relied on his foreign residency in the beginning stages of this action when he asserted that the Court had diversity jurisdiction over this dispute because Defendants were residents of Florida and he was a foreign resident.[5] Plaintiff argues, however, that he is entitled to a strong presumption because while he is a resident of Panama, he is also a resident of Florida. Plaintiff states that since 1998 he has owned a home in Palm Beach, Florida and that he continues to reside at that home for large parts of the year with his minor children, all of whom are United States citizens and over whom he has joint custody.[6]

The Court does not need to resolve the factual dispute regarding Plaintiff's residence. The case law is clear that whether he is a resident or a foreigner, Plaintiff's choice of forum is entitled to some amount of deference. *See Leon*, 251 F.3d at 1314 (stating that a foreign plaintiff's choice of forum is accorded some deference). Under the facts of this case, where, as discussed below, the private interests way heavily in favor of Plaintiff's choice of forum, Plaintiff's status as a resident or foreigner does not alter the conclusion that dismissal on the basis of *forum non conveniens* is not warranted.

    *(ii)*    *Convenience Factors*

Defendants argue that this case should be tried in The Bahamas primarily because Bahamian real estate

---

[4] In his Preliminary Affidavit of Husband in Support of Motion to Dismiss and Motion to Quash Service (*see* DE 106, Ex. A at 4.), Plaintiff states:

> I am not now nor was I at the time of the filing of the Wife's Petition for Dissolution of Marriage, a resident of the State of Florida. I was last physically present in the State of Florida in October, 2003 - for a total of two days - and left on October 31, 2003. I am a citizen and resident of Mexico and of Panama and hold passports from both countries. I have never sought permanent residence status in the United States of America and have traveled to the United States using either a diplomatic visa or a tourist visa.

[5] Defendants contend that upon learning that RAV Bahamas was also a foreign corporation, which would destroy the complete diversity requirement, Plaintiff amended the original complaint to add a federal cause of action, thereby invoking the Court's federal question jurisdiction.

[6] The parties also submitted post motion sur-replies and responses thereto in attempt to argue Plaintiff's residence. Such filings were not permitted by the Court and shall be stricken from the record.

is the subject matter of this case, the evidence and sources of proof are located in The Bahamas, and the central issue is whether the Bahamian government provided the requisite approvals. Specifically, Defendants contend that: (1) the essential nonparty witnesses are Bahamian government officials and they are not under the subpoena power of this Court; (2) banking documents associated with the disputed transaction are located in The Bahamas; and (3) it would not be inconvenient for Plaintiff to litigate in The Bahamas because he has traveled there many times and has local Bahamian counsel.

Plaintiff argues that the private interest factors weigh against dismissal primarily because Defendants have not carried their burden of demonstrating that the Southern District of Florida would be an inconvenient forum. Specifically, Plaintiff enumerates five reasons that dismissal would be inappropriate: (1) two of the three litigants reside in Florida and the only Bahamian litigant, RAV, has equally strong ties to Miami, Florida; (2) it is not inconvenient to transport party witnesses and evidence from The Bahamas to Miami; (3) Defendants did not provide any evidence that non-party witnesses would not appear if called and that much of the evidence could be sought through other procedures such as letters rogatory; (4) the ability to review the Bimini Bay development is not necessary for trial; and (5) the timeliness of the instant motion weighs in favor of Plaintiff.[7]

Defendants have not demonstrated that the private interest factors weigh in favor of dismissal on the basis of *forum non conveniens*. While it is true that the subject matter of the parties' agreement, as memorialized in the MOU, related to the two-phase development of land in The Bahamas, the current dispute has adequate ties to this forum to adjudicate the case here. Capo is a citizen and resident of Miami-Dade County, Florida. Also, while RAV is in-name a Bahamian corporation, its officers, its principal office and several other business venues are in Miami. Moreover, Capo, the 85% owner and controller of RAV resides in this District. Furthermore, the MOU, which serves as the basis for the parties' dispute, was executed in Palm Beach, Florida. Thus, the threat that Plaintiff is vexing, harassing or oppressing Defendants by his choice of

---

[7] As mentioned, the Court is satisfied that the timeliness of the motion is not an issue.

an inconvenient forum is not present in this case. *See Gulf Oil Corp.*, 330 U.S. at 508; *TNT USA, Inc. v. TrafiExpress, S.A. de C.V.*, 434 F. Supp. 2d 1322, 1334 (S.D. Fla. 2006) (holding that because two out of the four defendants had a presence in the District and the third did business there, it was hardly burdensome to litigate in Miami); *Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1254 (S.D. Fla. 2001) (holding that the ease and frequency of travel between Miami and The Bahamas argues against dismissal on the basis of *forum non conveniens*).

Second, Defendants' argument that non-party witnesses such as David Davis, Office of the Prime Minister, and Julian Francis, Central Bank of The Bahamas, would not voluntarily appear in this forum is not persuasive. First, these witnesses are only tangentially related to the alleged breach of the MOU in that they may have information regarding certain approvals contemplated therein. Moreover, there is no reason that such witnesses could not be deposed pursuant to the Federal Rules of Civil Procedure as travel to The Bahamas from Miami, Florida is not burdensome. *See TNT USA*, Inc., 434 F. Supp. 2d at 1334 (stating that conducting depositions of government related witnesses in Mexico City is not burdensome and traveling to Mexico to conduct a deposition does not amount to a valid reason to dismiss this action). Moreover, Defendants have provided no evidence that such witnesses would actually be unwilling to appear in this District. Finally, Defendants' argument that other Bahamian bank documents might more easily be obtained by a Bahamian court order is unpersuasive as international conventions can be used to procure the same documents in this District if they are in fact necessary.[8]

In summary, Defendants have not met their burden of demonstrating that The Bahamas would be a more convenient forum. The parties are present here, the contract at the heart of this dispute was executed in this District, and the relevant evidence is either here or can be brought here. Thus, given the presumption in

---

[8] Having found that the instant forum is not inconvenient for Plaintiff's first three reasons (parties' location, convenience of evidence, etc.), it is not necessary to address Plaintiff's fourth reason, i.e. necessity of reviewing the land development, though it is noteworthy that Defendants have not articulated an argument as to why a review of the land development would be necessary.

favor of Plaintiffs' choice of forum, whether it is strong or less than strong, dismissal on the basis of *forum non conveniens* is not warranted.

(b) <u>Public Interest Factors</u>

Because the private interest factors are neither in equipoise nor near equipoise, the Court need not address the public interest factors. However, for purposes of thoroughness, the Court will briefly address these factors. *See Leon*, 251 F.3d at 1311 (stating that "even though the private factors are 'generally considered more important' than the public factors, the better rule is to consider both factors in all cases"). The public interest factors in the *forum non conveniens* analysis include: a) administrative congestion resulting from cases being tried at a site other than that of their origin; b) the burden of jury duty on a community that has no relationship to the cause of action; c) the chosen forum's interest in the dispute; d) the alternative forum's interest in the dispute; and e) the difficulties associated with applying foreign law. *Sun Trust Bank*, 184 F. Supp. 2d 1246, 1265-66.

Defendants do not argue, nor can they argue the first two factors which are directed to whether a court and community unconnected to a dispute's site of origin should burden themselves with a matter that did not arise within their jurisdiction. Defendants are Florida residents, the MOU was negotiated and executed in Florida, consideration was delivered in Florida in the form of United States dollars, and the alleged breach of contract/fiduciary duties and the purported misrepresentation connected to the sale of a security took place in this District. Also, as this action may implicate federal securities laws, public policy provides that, although not dispositive of the appropriate forum, federal courts have an interest in adjudicating the issues. *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (recognizing that United States courts have an interest in enforcing United States securities laws).

Admittedly, The Bahamas has an interest in this dispute; a defendant's home forum always has an interest in providing redress for injuries caused by its citizens. *Sun Trust Bank*, 184 F. Supp. 2d at 1266. However, beyond this consideration, South Florida's interest appears to be greater. As to The Bahamas'

interest in this dispute, Defendants argue that the country has an overriding interest in resolving issues related to governmental approvals over title to Bahamian properties and ownership of stock in Bahamian corporations. Such argument is diminished by the fact that the Bahamian corporations that were suppose to be created pursuant to the MOU never existed. Thus, at present, it is only the Bahamian real estate that is the true interest of the Bahamian nation.[9] However, because all other factors weigh in favor of a South Florida forum and because Defendants are Florida residents who allegedly took actions that lead to this dispute in Florida, Florida's interest exceeds that of The Bahamas. *SME Racks*, 382 F.3d at 1104 (holding that the United States has an interest in protecting its citizens from predatory foreign business that actively solicited business and caused harm in the home forum).

As to the final public factor, difficulties in applying foreign law, it appears unclear whether Bahamian law will ultimately apply. However, even assuming the possibility that Bahamian law will apply, federal courts are often required to decide issues of foreign law. *Sun Trust Bank,* 184 F. Supp. 2d at 1266. Here, there are no language barriers to the Court's understanding of Bahamian law and Bahamian law is derived from English common law and has many similarities to Florida law. *Id.* (citing *Reid-Walen v. Hansen*, 933 F.2d 1390, 1397-98 (8th Cir.1991) (stating that Jamaican law is descended from British law, contains concepts similar to our own, and presents no language barrier). Thus, this public interest factors also weighs against dismissal.

The securities cases Defendants cite for the proposition that federal securities claims can be tried in foreign jurisdictions are factually different from this case. Unlike this case, in those cases the private interest factors also weighed in favor of dismissal. *See Alfadda v. Fenn*, 159 F.3d 41, 46-47 (2d Cir. 1998) (dismissing case on basis of *forum non conveniens* because both the private and public interest factors weighed in favor of dismissal, notwithstanding federal securities claim); *Republic of Panama v. BCCI*, 119 F.3d 935, 953 (11th

---

[9] Count III of the SAC seeks specific performance of the MOU, however, at this juncture, it is not clear what exactly Plaintiff seeks to have specifically performed. Thus, if as the case progresses it becomes apparent that specific performance involves the Court asserting jurisdiction over foreign government entities, the Court shall exercise its discretion under 28 U.S.C. § 1367(c) to sever and dismiss count III from the SAC.

Cir. 1997) (dismissing case for *forum non conveniens* where private and public interest factors weighed in favor of dismissal and where sole United States interest had been substantially vindicated by the criminal RICO proceedings in Washington D.C.); *Yung v. Lee*, 160 Fed. Appx. 37, 41 (2d 2005) (holding that dismissal on the basis of *forum non conveniens* appropriate, notwithstanding federal securities claim, because both the private and public interest factors favored an alternative forum). Therefore, for the foregoing reasons, Defendants have not met their burden to warrant a dismissal on *forum non conveniens* grounds.

### IV.    APPOINTMENT OF A SPECIAL MASTER AND AN ACCOUNTING

Plaintiff seeks the appointment of a special master for the purposes of marshaling account information and conducting an accounting of both Defendants. Specifically, Plaintiff seeks an accounting of the following matters:

1. Defendants' use of and accounting for any monies provided by Plaintiff to Defendants, including a review of bank statements and internal books and records.

2. Analysis of the Bimini Bay Development Project, including but not limited to a review of any internal rates of return, the budget of business plans for the Project, the financing structure for the Project, review of any distributions or disbursements to any owner or purported owner, an accounting of any extraordinary payments or transfers of money, the current status of the project, and/or projections for future development.

3. Review of all records reflecting ownership of and/or development agreements for the Project.

Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate. *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990) (citation omitted). Thus, because Plaintiff has yet to demonstrate that a fiduciary relationship existed, a ruling on Plaintiff's entitlement to an accounting is premature. Accordingly, the Court will deny Plaintiff's motion but give him leave to re-file after the summary judgment stage assuming he establishes a fiduciary relationship.

V. **CONCLUSION**

For the reasons set forth herein, it is hereby

ORDERED that

(1) Plaintiff Haddad's Motion for Leave to File a Very Brief Surreply [DE 112] is DENIED. The Clerk of Court is directed to STRIKE Plaintiff's sur-reply, and the responses thereto [DE 112, Ex. A; DE 113; DE 115]

(2) Defendants' Motion to Dismiss the Second Amended Complaint on the Grounds of *Forum Non Conveniens* [DE 94] is DENIED.

(3) Plaintiff's Verified Motion for Appointment of a Special Master and an Accounting [DE 89] is DENIED WITHOUT PREJUDICE with leave to re-file once Plaintiff has established his entitlement to an accounting.

DONE and ORDERED in Miami, Florida, this 8th day of April, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record